JOSIAH FULLER, RESPONDENT, *v.* CHARLES W. REED, APPELLANT.

CONTRACTS.—If the parties to an alleged contract agree that it shall be reduced to writing, in an instrument to be signed by them, it will not be obligatory on them without the execution of such written instrument.

FRAUDS—STATUTE OF.—If a part of an entire contract is void under the Statute of Frauds, it is void *in toto.*

IDEM.—If R. orally agrees with F. to give him a certain portion of the purchase money, and also a certain parcel of land, for his services in effecting the sale of R.'s land, there being no note or memorandum, in writing, of the promise, the whole contract, as well for the money as for the land, is void, and no action will lie either for the money or the land.

ACTION FOR MONEY PAID OR SERVICES RENDERED UNDER A VOID CONTRACT.—In such case the injured party has no remedy at law upon the contract; he may, however, disaffirm the contract, and maintain his action to recover back the money paid, or the value of the services rendered.

DAMAGES—MEASURE OF—EVIDENCE.—In an action for a breach of a valid contract for the conveyance of land, the measure of damages would be the value of the land agreed to be conveyed. But, for the recovery of money paid, or services rendered upon a void contract for the conveyance of land, the measure of plaintiff's relief is the amount of the money paid and interest, or the value of the services rendered; and, in such a case, evidence of the value of the land is inadmissible.

APPEAL from the District Court of the Fourth District, City and County of San Francisco.

Upon the trial, when the plaintiff had introduced all his testimony, the defendant moved for a nonsuit, which was refused.

The verdict and judgment was for the plaintiff, and the defendant appealed.

The case is stated in the opinion of the Court.

*George A. Nourse,* for Appellant.

The Court below erred in refusing to grant defendant's motion for a nonsuit.

*First*—Taking plaintiff's testimony to be true, it appears that the parties were to make their agreement in writing, which was never done. The rule is, even where the agreement declared on is in writing—much more if only in parol, as in the case at bar—that where the alleged agreement contemplates a further act to make the contract binding and obligatory on both parties, the contract shall be deemed to be only for the performance of that further act. (*Doe* v. *Ashburner,* 5 T. R. 163. See, also, *Goodtitle* v. *Way,* 1 Term R. 738; *Sturgeon* v. *Painter,* Noy R. 128.)

*Second*—The agreement of defendant, as alleged in the complaint, was that he should pay plaintiff certain money, and convey to him certain land for certain services to be

performed.   The contract to convey land, not being in writing, was and is void under the statute.   (Statutes of Frauds of California, Sec. 8; Hittell's Digest, Sec. 3152.)

A part of the contract being thus void, the whole is void; for though these two matters may be severable, yet the alleged consideration cannot be divided.   So the transaction must stand or fall as a unit.   In such case, it is held that a contract void in part, is void *in toto.*

"It has been repeatedly held, that if part of one entire contract be void under the Statute of Frauds, the whole is void; that the party shall not be permitted to separate the parts of an entire agreement, and recover on one part, the other being void."   (*Van Alstine* v. *Wimple,* 5 Cowen, 164.)

This case cites, in support of the doctrine above enumerated, *Lord Lexington* v. *Clark and Wife,* 2 Ventr. 223; *Chater* v. *Bickett,* 7 T. R. 197; *Crawford* v. *Morrell,* 8 John. 253; *Sherrill* v. *Crosby,* 14 John. 358; *Morgan* v. *Hays,* 1 John. Ch. Rep. 339; *Botsford* v. *Burr,* 2 *Ib.* 405; *Steere* v. *Steere,* 5 *Ib.* 1.)

The first case above cited (2 Ventr. 223), is a very strong one upon this point.   In it, the agreement of Mrs. Clark, one of the defendants, was to pay £160 of rent due and in arrear from her former husband to plaintiff, and also £260 additional.   The consideration was good, and the £160 had been actually paid.   But it was held that the agreement to pay the £260 was void, because an agreement to pay the debt of another (the £160, due from her husband's estate), was coupled with it and formed part of the transaction.

*M. H. Myrick,* for Respondent.

*First*—The contract, as a contract for the rendition of services, was entered into.   The object of desiring to have it reduced to writing, was to be able to compel a conveyance. It was an employment to render services, without writing. It nowhere appears that Fuller was to do nothing until it was in writing.   Indeed, he went on, at Reed's earnest request, and found a purchaser before the time fixed for the making of the writing.   He had, therefore, at Reed's request, earned his compensation before the time of meeting.   His.

work was then complete, and he *then and there* had a claim for compensation.

*Second*—In an action for breach of contract to convey, the measure of damage is the value of the land. (*Brincker-hoff* v. *Phelps*, 24 Barb. 100.)

One who renders services under an agreement void by the Statute of Frauds, may recover on a *quantam meruit*. (*Shute* v. *Dow*, 5 Wend. 204; *Broadwell* v. *Getman*, 2 Denio, 87.)

A parol contract to pay for services by conveying land, is not void by the Statute of Frauds; but the value of the services can be recovered according to the value of the land, which may be resorted to as a measure of damages, though the contract to convey cannot be enforced. (*Burlingame* v. *Burlingame*, 7 Cowen, 92.)

If no specific amount of money is named to be paid by a conveyance of the land, plaintiff may prove the value of the land, with a view to the value of the services. (*King* v. *Brown*, 2 Hill, 485.)

This case does not overrule *Burlingame* v. *Burlingame* (7 Cowen, 92), except as to declaring on special contract. Under our Practice Act that objection is of no force.

Services rendered in part performance of a void contract are to be paid for, because the contract is at an end, and the action is in disaffirmance of the void contract. (*Baldwin* v. *Palmer*, 10 N. Y. 232.)

SPRAGUE, J., delivered the opinion of the Court:

The complaint in this case contains three distinct counts.

The first count is upon a specific contract, the terms of which, as alleged, are substantially that on or about the 6th of April, 1868, the defendant, being the owner of eight thou-six hundred and ninety-seven acres of land, located in Yolo County, this State, in consideration that plaintiff, at the especial instance and request of defendant, undertook to find a purchaser for and negotiate a sale of eight thousand acres of said land at the price of $4,000, or such further sum as he could obtain therefor, promised and agreed to pay the plaintiff one half of so much of said price

as should be in excess of $3,000, and would convey to plaintiff the remainder of said lands, to wit—six hundred and ninety-seven acres.

It is then alleged "that, thereupon, afterwards, on or about the 14th of April, 1868, the plaintiff did find a purchaser who would purchase 8,000 acres of said land at the price of $4,000, and plaintiff did negotiate a sale thereof at said sum of $4,000, to one M. E. Austin, who undertook and agreed to purchase 8,000 acres of said land at said sum of $4,000, provided defendant would convey the same to him.    *    * That, after plaintiff had found said purchaser and negotiated said sale, plaintiff requested defendant to convey the said 8,000 acres to said M. E. Austin, and said 697 acres to plaintiff, and to receive said sum of $4,000, and to pay to plaintiff $500 — but to do either thereof the said defendant absolutely refused and neglected, and ever since has, and still does neglect and refuse."

The second count is like the first, except the terms of the contract as alleged in respect to the compensation which defendant agreed to pay plaintiff for finding a purchaser for, and negotiating a sale of eight thousand acres of said land is alleged to be "one half of so much of said price as should be in excess of $3,000, and would pay to plaintiff the value of the remaining six hundred and ninety-seven acres of said land," and, as in the first count, alleges the value of said six hundred and ninety-seven acres to be $1,942 50.

The third count alleges that plaintiff was employed by defendant to find a purchaser for and negotiate a sale of eight thousand acres of land, situate in Yolo County, and that for such service defendant promised to pay plaintiff so much as the same should be reasonably worth. That plaintiff performed the service, found a purchaser for, and negotiated a sale of eight thousand acres for defendant, and that such services were reasonably worth $2,442 50. That no part of such sum has been paid, and judgment is demanded against defendant for said sum of $2,442 50, with interest, etc.

The complaint was not verified, and the defendant answered, denying each and every allegation of the complaint, generally.

On the trial, the plaintiff introduced evidence tending to prove the contract or agreement as alleged in the first count of his complaint; but did not introduce or offer any evidence tending to establish the contract or agreement as alleged in his second count, or any evidence whatever under his third count, tending to prove the value of his services, as alleged therein.

After plaintiff had closed his testimony, defendant moved for a nonsuit, on the ground "that the testimony in behalf of plaintiff shows that the contract between him and defendant, under which he claims judgment, was never completed between them, and he never could recover under a contract that was never completed or signed," which motion was overruled by the Court.

The defendant then introduced evidence in rebuttal, and the case was submitted to the jury, which rendered a general verdict for plaintiff in the sum of $750. Whereupon defendant moved for a new trial upon a statement agreed to by the parties, which motion was overruled, and this appeal is taken from the judgment and order overruling defendant's motion for a new trial.

Two questions are now presented : First—Upon the evidence introduced, is any contract shown to have existed, as alleged in the first count of plaintiff's complaint? This question was first presented in the Court below on defendant's motion for a nonsuit. Second—If the contract or agreement, as alleged in the first count, is established as therein alleged—the same being a verbal contract, a portion of which was for the conveyance of lands, and that portion void by the Statute of Frauds—can an action be maintained upon such contract for its enforcement, or any portion thereof, or for the recovery of damages against the defendant for a breach of its conditions on his part?

Upon the first point, the question was, by the instructions of the Court, distinctly submitted to the jury upon the evidence, and by their general verdict the question was answered in the affirmative, and defendant, in his statement on motion for a new trial, specifies as one of the grounds thereof par-

ticularly, that the evidence was insufficient to sustain the verdict of the jury upon this point.

All the evidence is contained in the record, and all tending to sustain the verdict upon this point is embraced in the testimony given by the plaintiff in his own behalf, while the defendant, by his testimony in his own behalf, directly contradicts that of the plaintiff. But, disregarding entirely the testimony of defendant, and resting the question upon the testimony of plaintiff, we are satisfied it was not only insufficient to sustain the verdict, but that the verdict was contrary to such evidence.

This testimony of plaintiff is as follows:

"About the 10th of April, I think it was, he (defendant) came down again, and said he was disappointed in the arrangement he made; he was not satisfied with it, and he wanted me to negotiate a sale of the land as quick as I could. This is the last negotiation. I was disappointed before. I told him I did not want anything to do with it this time, unless I had a definite idea of what was to be done. He said that was all right. In the first place, I wanted to know how much time I was to have. I was to have until Saturday. This was Tuesday. I said, I want this in writing. He said, we will put it in writing. That was the afternoon of the funeral of my partner, and I told him I must attend the funeral that afternoon. It was then about time to go to the funeral. He said, I will come in the morning and fix the papers satisfactory. I proposed to have the terms of the sale of the tract in writing, or to have a deed in blank, to be filled in when the transaction was completed. My counsel advised me not to take a deed in blank. I went as soon as I came back from the funeral, knowing the parties I had talked with to be anxious to negotiate for it, and I found them ready and willing, and I completed the negotiation. In regard to the terms, I wanted to fix upon a definite price. The bargain with Reed was that I should have half what I could get over $3,000, reserving the balance of the land over the eight thousand acres, for I told him my main object was to secure an interest in the land. We looked

over the maps and examined several tracts to make up that six hundred and ninety-three acres, and to have it located upon the edge of the land, so as not to break in upon his tract. There was one tract which I liked to have, but it did not complete the amount, and Reed pointed out a smaller corner. The contract was not in writing. The contract or agreement between us was, that I should have half of all over $3,000, and an interest in the land above eight thousand acres. Reed said the next morning he would come down and make out the papers necessary to complete the transaction. Other parties wanted to see me in regard to the land. I saw Austin that same day, Tuesday, and completed an arrangement with him; he was to give $4,000, gold coin, for eight thousand acres. I waited next morning for Reed, and he came down and said he had disposed of the land. I was authorized to sell the land for less than $4,000; for as much as I could get over $3,000, and to have half of that, and the excess of the land over eight thousand acres. When I saw him next morning, he said he had disposed of the land. Afterward I met him and demanded payment of $500, and to make a deed to the parties with whom I had negotiated, according to agreement. He refused to do either." Question—"How about the deed to yourself of the six hundred and ninety-three acres?" Answer—"We made a compromise in this way: That I should retain my interest in the lands equal to that, and he was to give me $100 cash that day, or to send it down the next morning. I was to have the six hundred and ninety-three acres and $100. He never did either. That was after he told me he had disposed of the land; I agreed to compromise for that amount, if it was paid that day or next. If not paid that day or next, I was not to give up the $500 claim." Cross-examination—"These letters were received before the day of the funeral; before the last agreement; they related to a former transaction the week before. As I said, I had almost completed that negotiation, when the letter was received ordering me to send papers. I sent the papers up on receipt of the letter. I had not the papers when I made this last agreement. He had not the papers with him; he said he would bring them in the morn-

ing. I attended the funeral. I told Reed it was probable I should not be back in season from the cemetery to do much. I told him I wanted a definite understanding in regard to the terms and the time, and that it should be in writing. He agreed to come in and sign the contract the next morning, or he would do it then. I completed the arrangement with Reed about the agency to sell the land; the verbal agreement was well understood. The agreement was to be in writing. He said he would make it in writing, if I required it, or he would sign the deed in blank, so that I could have it filled out to the parties. He did not fulfill the agreement." Question—"If you had thought that he could be trusted, why was you so anxious to have the matter in writing?" Answer—"So as he could not go and dispose of the land as he had before." Question—"If he had disposed of the land before you, did you suppose you could recover anything?" Answer—"I considered the agreement was positive. When he first came down, I said to him that I did not want anything more to do with him, unless the agreement was positive and definite, and we agreed to put it in writing, so as it should be done."

From this testimony of plaintiff, it is very evident that at the interview which was had between the plaintiff and defendant on the afternoon of Tuesday, April 10th, nothing was accomplished further than to agree upon the preliminary, informal terms of a contract; that such contract should be in writing, and that the parties were to meet the next morning for the purpose of completing the contract, by reducing the same to writing in proper form and executing it; and it is, in our judgment, entirely clear, from all that transpired on this occasion, as detailed by the plaintiff, that nothing more was expected to be done by either of the parties until the next morning, when the terms of the agreement were to be reduced to writing in form and signed by the contracting parties; and certain it is that the plaintiff, at no time during this interview of the 10th, manifested any disposition, so far as disclosed by his evidence, to enter upon the service of defendant until the terms of the agreement, under which he undertook the service, were formally reduced to writing and

signed by the parties.   Nor did the defendant anticipate or expect that plaintiff would make any effort to find a purchaser or negotiate a sale of his lands, until the terms and conditions of the employment and service, as preliminarily arranged between the parties, had been ratified by the final execution of a written agreement, embodying such terms and conditions.   And although the plaintiff, contrary to his expectations, as expressed to defendant, did find time, after his return from the funeral of his partner, to wait upon Austin and negotiate the terms of a sale, it is obvious to our minds that he did not intend defendant should know that he had done so, or derive any benefit or advantage from what he had done, until after the execution of a written agreement embodying the terms and conditions of such service, as testified by plaintiff at folio 35-6 : "I told him I did not want anything to do with it this time, unless I had a definite idea of what was to be done.   He said that was all right. * * * I said, I want this in writing.   He said, we will put it in writing.   That was the afternoon of the funeral of my partner, and I told him I must attend the funeral that afternoon. It was then about time to go to the funeral.   He said, I will come in the morning and fix the papers satisfactory."   Again, at folio 39 : "Reed said the next morning he would come down and make out the papers necessary to complete the transaction."   Again, on cross-examination, folio 54: "I attended the funeral.   I told Reed it was probable I should not get back in season from the cemetery to do much.   I told him I wanted a definite understanding in regard to the terms and the time, and that it should be in writing.   He agreed to come in and sign the contract next morning, or he would do it then.   I completed the arrangement with Reed about the agency to sell the land; the verbal agreement was well understood.   The agreement was to be in writing." And again, at folio 59 : "I considered the agreement was positive and definite, and we agreed to put it in writing. So, when he first came down, I said to him that I did not want anything more to do with him unless the agreement was positive, as it should be done."

Regarding alone all the testimony in behalf of plaintiff as

uncontroverted, no contract is shown to have been completed or executed between the parties; something remained to be done by each of the parties to consummate the contract, which appears never to have been accomplished. Clearly, neither of the parties understood, from what transpired between them on the afternoon of the 10th, that any such agreement had been by them then consummated as to vest in either a legal interest or right. They understood that something remained to be done to vest such legal interest; that there was to be some further assurance. The Court below, therefore, erred in overruling defendant's motion for nonsuit.

Should we, however, regard the agreement as fully consummated, and by the evidence established, as alleged in the first count of the complaint, then the second question remains to be disposed of. By the terms of the contract, as alleged, the defendant stipulates, upon certain conditions to be performed by the plaintiff, to give to the plaintiff one half of all that eight thousand acres of defendant's land could be sold for by plaintiff, over and above three thousand dollars, and to give plaintiff all the residue of a certain tract of land, over and above eight thousand acres, which residue or excess is alleged to be six hundred and ninety-seven acres. This contract being oral, and no note or memorandum thereof having been reduced to writing and signed by either party thereto, that portion thereof stipulating for the transfer by defendant to plaintiff of lands is null and void by the eighth section of our statute concerning fraudulent conveyances and contracts, and the agreement or contract being entire, and void as to a portion, is void *in toto;* hence, no action can be maintained upon such contract, either for the enforcement of its terms or for damages resulting from a breach of its terms by either party thereto; and even though the defendant had, on his part, voluntarily performed that part of the contract within the Statute of Frauds by an absolute conveyance to plaintiff of the six hundred and ninety-seven acres of land, no action could be maintained upon the contract for the enforcement of that portion not within the statute. (*Lexington* v. *Clark and wife,* 2 Ventr. 223; *Chater* v. *Bickett,* 7 Tenn. Rep. 201;

*Crawford* v. *Morrill*, 8 John. 255; *Van Alstine & Whimple*, 5 Conn. 164.)

If money has been paid, or services rendered, in the performance of the conditions of a void contract by one party thereto, and the other party fails to voluntarily perform on his part, the injured party has no remedy at law upon the contract; he may, however, under such circumstances, disaffirm such contract, and maintain his action at law to recover back money so paid, or the value of services so rendered. (*King* v. *Brown*, 2 Hill, 485; *Baldwin* v. *Palmer*, 10 N. Y. 234.)

In an action for damages resulting to plaintiff from a breach, on the part of defendant, of a valid contract between the parties for the conveyance of land by defendant, in consideration of money paid or services rendered by plaintiff, the measure of damages would obviously be the value of the land agreed to be conveyed. But, in assumpsit for the recovery of money paid, or services rendered upon a void contract for the conveyance of lands, the measure of plaintiff's relief is the money he has advanced, with interest, or the reasonable value of the services rendered, without reference to, and disconnected with, the express contract; the defendant's liability in such case rests upon an implied promise or assumpsit, and evidence of the value of the land stipulated to be conveyed by the express void agreement is inadmissible as a measure of the value of services rendered by plaintiff, or the relief to which he is entitled in consideration of money advanced upon such express contract. To permit such testimony for the purpose of establishing the reasonable value of services rendered by plaintiff, or the measure of indebtedness of defendant upon his implied promise to refund money advanced by plaintiff, would, in effect, allow a party in one breath to disaffirm a contract, and in the next to affirm and claim the benefit of the same contract as valid and subsisting, and substantially enable him to recover as for breach of a valid express contract in a simple action of assumpsit upon an implied contract.

The evidence offered in this case by plaintiff, and admitted against the objections of defendant, to prove the value of the land, by the alleged express contract agreed to be conveyed,

as the measure of the value of plaintiff's services, was clearly
incompetent, although such evidence would have been com-
petent in an action for damages resulting from a breach by
defendant of an express contract in writing to convey these
lands. This evidence, therefore, is not applicable to the third
or *quantum meruit* count of plaintiff's complaint, nor is it
applicable to the second count, as there is no evidence tend-
ing to establish such contract as is alleged in said count.

With these views, it becomes unnecessary to notice other
points discussed in the briefs of counsel.

The judgment and order denying a new trial must be
reversed, and a new trial granted.