# OHM v. CITY AND COUNTY OF SAN FRANCISCO et al.*

## No. 13,689; December 9, 1890.

### 25 Pac. 155.

**Mexican Grants—Validity—Possession.**—A Mexican grant of eight hundred varas square, "at a place called Rincon, embraced within the limitation of Yerba Buena," is so vague and uncertain that nothing passes by force of the grant alone, nor will it be helped out by possession taken under it by the grantee, as the Mexican law, then in force, required possession to be given "by judicial authority, with the citation of all those bounded upon him."

**Mexican Grants—Validity—Record.**—Such grant is also fatally defective, where the original application, to which is attached each successive paper or certificate up to and including the final grant, fails to show on its face that the grant was made with the approval of the pueblo, of the governor, and of the departmental assembly, and that a record of such fact was made in the public archives, as required by the laws of Mexico then in force.

**Evidence—Judicial Notice.**—Under Code of Civil Procedure, section 1875, subdivision 3, which permits courts to take judicial notice of the acts of the judicial department of the state, the supreme court will judicially notice the vacation of a decree confirming a Mexican grant.

----

*For subsequent opinion in bank, see 92 Cal. 437, 28 Pac. 580.

**Mexican Grants—Action for Possession.—One Who Alleges** that he has a perfect title to land under a Mexican grant, not barred by the statute of limitations, may maintain a legal action for the possession, and there is no necessity for the interference of a court of equity to enable him to assert his rights.

**Mexican Grants—Limitation of Actions.—Since the Passage** of Statutes of 1863, page 327, which gives five years "from the date of its passage" in which one claiming title to land under a Spanish or Mexican grant may commence an action for its enforcement, the want of confirmation, patent, or survey of such a grant by the United States government has not operated to interrupt the running of the statute.

**Pleading.—Where a Pleader, in His Complaint,** alleges a fact, and then sets out the written evidence on which he relies for proof of the fact, the complaint will be held good for only what the evidence proves.

APPEAL from Superior Court, City and County of San Francisco; John F. Finn, Judge.

A. Everett Ball and J. M. Kinney for appellant; Pillsbury & Blanding and Geo. Flournoy, Jr., city attorney, for respondents.

FOX, J.—This is an action in equity for a decree declaring the appellant to be the owner of certain premises situate in the city and county of San Francisco, commonly called, in early times, the "Sherrebeck Claim," and adjudging that the defendants hold the legal title in trust for plaintiff; and also for rents and profits up to the time of the filing of the complaint, in the sum of $1,500,000, and at the rate of $250,000 per month from that date (August 1, 1885) to the date of judgment. Defendants demurred to the complaint on several grounds, and, among others, that it failed to state facts sufficient to constitute a cause of action; that plaintiff's claim was stale; also that it was barred by the provisions of sections 318, 319, 322 and 343 of the Code of Civil Procedure. The demurrer was sustained, and defendants had judgment, from which plaintiff appeals.

In his complaint, plaintiff claims as successor in interest of Peter T. Sherrebeck, the alleged grantee of a Mexican grant of a tract of land eight hundred varas square, within the pueblo of San Francisco. He does not content himself

with alleging the ultimate fact of grant and title, but sets out with great particularity all the proceedings had in applying for, and in the making and delivery of, the alleged grant. He shows that a pueblo was already established; that the land was within the pueblo; that the applicant applied to the prefect of the district for a grant; that the prefect, as the law required he should do, referred the application to the alcalde of the pueblo, who reported the land vacant, and the applicant as possessing the requisite qualifications; but that, in his opinion, only land upon which to build a house and corral, and to plant, can be granted to him, which means that only a house lot of fifty varas square, and a planting lot of two hundred varas square, could be granted to him. Whereupon the prefect, according to the allegations of the complaint, made a grant to the applicant of eight hundred varas square, "at a place called 'Rincon,' embraced within the limitation of Yerba Buena," which grant is set out in the complaint, and from which the quotation just made is copied. It contained no description or boundaries whatever other than that so quoted. It did not require that juridical possession be given, and the complaint does not show that any ever was given. It, however, alleges that under it the grantee took possession of eight hundred varas square, claimed to be the property now sought to be recovered. The complaint fails to show a valid grant. The description given in the paper grant was so vague and uncertain that nothing would pass by force of this paper alone, nor would it be helped out by possession taken under it by the grantee. Under the law, juridical possession by the public authorities was required to be given. "No person," reads the law, "though his grant be older than others, can take possession for himself, or set limits to his landed property, unless it be done by judicial authority, with the citation of all those bounded upon him (colindantes), for whatever is done contrary to this will be null and of no validity or effect." "As the grantee could not locate his land by his own survey, it would seem a necessary conclusion that he could not do so by mere occupation, and the assertion of a claim to any particular place": Waterman v. Smith, 13 Cal. 411. This survey or juridical possession made or given was requisite, in order to attach

the grant, if it was one having any force whatever, to any specific tract of land, and must have been made by competent authority: Steinbach v. Moore, 30 Cal. 508, affirmed in More v. Steinbach, 127 U. S. 79, 32 L. Ed. 51, 8 Sup. Ct. Rep. 1067; Leese v. Clark, 18 Cal. 536.

This grant was also fatally defective in other particulars. It is a matter of common knowledge, as well as of law, that the initial paper, in all these cases of Mexican grants, was the petition, or application for a grant. Each successive paper or certificate, to and including the final grant, and the certificate of juridical possession, was indorsed upon or attached to this petition, so that when the last step was taken which perfected the title, the grantee had in his possession all the original papers in the case constituting one instrument, records of the different parts thereof having been made in the public archives as the proceedings progressed, and this instrument constituted his muniment of title. In this case the plaintiff has alleged that the grant was made with the approval of the pueblo, the governor of the territory, and of the republic of Mexico. The law required that it should be so made, and that a record of the fact should be made in the public archives. The plaintiff has made his paper title a part of his complaint, by setting it out in haec verba. By so doing, he has proved that the averments of his complaint above referred to are not true. The grant was not made with the approval of the pueblo, but against the objection of the chief executive officer, who spoke for the pueblo, as shown upon the face of the paper pleaded. The paper fails to show that it was with the approval of the governor of the territory, or of the republic of Mexico. Without such approval, attested by the signature of the governor, and the order of the departmental assembly, it was without authority of law. Such was the rule, even where the lands were not municipal: Luco v. United States, 23 How. (U. S.) 515, 543, 16 L. Ed. 545. Being municipal lands, the fact of the grant must be registered in the public archives of the municipality: S. F. Land Titles, p. 144, art. 17; Dwinelle's Colonial History of San Francisco, addenda, p. 11; Plan of Pictic, sec. 17; Donner v. Palmer, 31 Cal. 508. The paper fails to show registration anywhere, either in the archives of the nation, the department, or the municipality.

The complaint alleges that it was recorded by the prefect in the archives and registers of his prefecture; but the paper fails to show even such recording, and there was no law making the archives of the prefect, if he kept any, public archives for the registration of land titles. It may be said that since there is an allegation of the recording, whether it was recorded or not becomes a matter of proof, and cannot be questioned on demurrer. The answer to this is that the fact is one which ought to appear upon the paper itself according to the laws and usages of the country; that these laws, usages, and customs of the country are matters of which the court will take judicial notice, as well as of the principal fact that they are not so recorded: Fremont v. United States, 17 How. (U. S.) 567, 15 L. Ed. 241; Romero v. United States, 1 Wall. (U. S.) 721, 17 L. Ed. 627. The complaint is to be taken most strongly against the pleader. When he alleges a fact, and then sets out the written evidence upon which he relies for proof of the fact, the complaint will be held good for only what the evidence proves.

There are other points of objection taken to the validity of this grant, but they do not need to be considered here. To obviate these defects the complaint alleges decree of confirmation of this grant, on the fifth day of December, 1859, and sets out the decree. This decree is equally indefinite with the grant in the matter of description, and on its face requires a survey and location. More than twenty-five years had passed after this alleged decree before the filing of this complaint, and there is no allegation of survey whatever. But more than this, the pleading of this decree was unwarranted in law, and almost without precedent in the history of jurisprudence. The decree itself was vacated and set aside within six months afterward, and there is no decree of confirmation of the grant. This fact does not appear upon the face of the complaint, but it is a matter of common history and knowledge of the country, and is an act of the judicial department of the government of the United States, of which this court will take judicial notice, under subdivision 3, section 1875, Code of Civil Procedure: Sharon v. Sharon, 79 Cal. 697, 22 Pac. 26, 131; Romero v. United States, 1 Wall. (U. S.) 742, 17 L. Ed. 627.

Plaintiff's cause of action, if any he ever had, is both stale and barred by the statute of limitations. There is no pretense in the complaint that the plaintiff or his grantor have been in possession of this property since the date of the treaty of peace, in 1848—forty-two years since. It is alleged that the pueblo became a municipal corporation, by the name of the "City of San Francisco" (the predecessor of the present municipal defendant), in April, 1850; that it applied for confirmation of its title to four square leagues, including said eight hundred varas square, in 1852; that, pending the proceedings thereunder, it disputed the title of said Sherrebeck, and the location of the same. According to the rules of construction of pleadings, it must be held that this is an admission that the title was disputed by the defendant as early as the institution of such proceedings—July 1, 1852. Plaintiff's grantor had been then at least four years out of possession. If, as plaintiff claims, he had a perfect title under the Mexican government, or under the pueblo, his cause of action then at once arose, and he could at once, and if his title be, as claimed, a perfect one, and not barred, he can still maintain his action at law, for the recovery of the possession of said property. That such an action could be maintained upon such a title as he claims this to be was held by this court as early as Reynolds v. West, 1 Cal. 323; affirmed in Cohas v. Raisin, 3 Cal. 443; Hart v. Burnett, 15 Cal. 616; Payne v. Treadwell, 16 Cal. 231; and has never been overruled. According to his own theory of the case, there has therefore never been a necessity for a resort to a court of equity to assert his right. He had ample remedy at law, and a court of equity will not interfere.

But he has slept so long upon his rights, if he ever had any, that he cannot now recover at law, and the same rule that forbids his recovery at law forbids it in equity. His right of action accrued, and the statute of limitations commenced to run against him, at the latest, July 1, 1852. Before the expiration of five years, however, the statute of limitations was amended, so that the action could be maintained if commenced within five years from the time of final confirmation of the title by the government of the United States, or its legally constituted authorities, if the title was

one derived from the Spanish or Mexican government: Stats. 1855, p. 109. In 1863, the statute was again amended, giving five years from the date of the passage of that act in which to commence the action, where title was claimed under the Spanish or Mexican government, unless five years had already run since the date of confirmation: Stats. 1863, p. 327. Since the passage of that act, there has been no disability on account of want of confirmation, patent, or survey, against the running of the statute of limitations. A careful reading of that act can leave no doubt that the statute of limitations commenced to run in favor of the city and county of San Francisco, and its grantees, for the lands embraced in the grant to the pueblo of which it or they were in possession at the date of that act (April 18, 1863), no matter whether it be held that the confirmation of the grant was the act of Congress of July 1, 1864, conveying the title to the land embraced within the Van Ness Ordinance (of which the Sherrebeck claim was a part); the act of March 8, 1866, granting and relinquishing to the city the four leagues confirmed by the decree of the circuit court of May 18, 1865; the date of the final survey of the four leagues, or of the patent to the city. There can be no doubt that five years, without reference to date of confirmation, is the limitation under the codes, and to our minds it is equally clear that such is the limitation under the act of 1863, when section 6, as there amended, is carefully analyzed, as it needs to be, for it is not clearly constructed, and at first reading is somewhat difficult of comprehension. This court, however, seems to have reached the same conclusion, as to its proper construction and effect, as long ago as San Jose v. Trimble, 41 Cal. 536. Judgment affirmed.

We concur: Sharpstein, J.; Works, J.; Paterson, J.

McFARLAND, J.—I concur in the judgment on the first point discussed; but what is said about the statute of limitations is very important, and may lead to serious consequences in other cases. It is the general understanding that the statute does not begin to run until after a patent. Does not this opinion overturn that doctrine?