[Sac. No. 1833. In Bank.—March 27, 1912.]

J. C. LONG et al., Respondents, v. T. H. LONG et al., Appellants.

PRACTICE—BILL OF EXCEPTIONS—FAILURE TO DELIVER TO CLERK IN TIME—DELAY IN TRANSMISSION THROUGH MAIL.—The trial court may, by order, relieve a party from the failure to deliver a proposed bill of exceptions and the proposed amendments thereto to the clerk for the judge within the time required by section 650 of the Code of Civil Procedure, if they were mailed to the clerk in due

time and did not reach him because they were lost in transmission through the mail.

STATUTE OF FRAUD—CONTRACT NOT TO BE PERFORMED WITHIN A YEAR—ORAL SUB-CONTRACT TO CARRY MAIL—PART PERFORMANCE.—An oral agreement, whereby the promisors in substance undertook, as sub-contractors, to perform the work of carrying the United States mail for the remainder of the period called for by the original contracts between their promisees and the United States government, which period had upwards of three years to run, is within the statute of frauds, and part performance thereof does not take it out of the statute.

ID.—FRAUD—REFUSAL TO PUT ORAL AGREEMENT IN WRITING.—The refusal of such promisors to embody such agreement in a written contract, in accordance with their oral promise, does not constitute fraud within the rule that the statute of frauds will not be enforced where the effect would be to perpetrate a fraud.

ID.—ESTOPPEL—CHANGES MADE BY PROMISEES IN THEIR BUSINESS CONDITIONS.—Such promisors are not estopped to set up the invalidity of the oral contract by reason of subsequent changes made by the promisees in their residential or business conditions as the result thereof, when no knowledge of such intended changes or of the necessity therefor was had by them at the time of the oral agreement.

APPEAL from a judgment of the Superior Court of Lassen County. N. D. Arnot, Judge, presiding.

The facts are stated in the opinion of the court.

Dodge & Barry, for Appellants.

Rankin & Julian, for Respondents.

SHAW, J.—This is an appeal from the judgment taken within sixty days after its rendition.

The respondents' objections to the consideration of the bill of exceptions are without merit. The proposed bill and the proposed amendments thereto were not delivered to the clerk for the judge within the time required by section 650 of the Code of Civil Procedure, but it appears that they were mailed to the clerk in due time and that they did not reach him because they were lost in transmission through the mail. Upon motion, after due notice as the record recites, the court afterwards made an order relieving the appellants of this omission and permitting the bill and amendments to be then filed,

which was done. The bill was thereafter duly settled, and it is therefore properly a part of the record on appeal.

The case involves a breach of an alleged agreement to execute a sub-contract for the carriage of the United States mails on two mail routes. The acts of Congress provide that a mail contractor under the United States will not be permitted to sublet or transfer his contract without the consent in writing of the postmaster-general, and that when such consent is obtained, the sub-contract between the contractor and his transferee must be in writing, and a copy thereof must be filed in. the office of the second assistant postmaster-general. Thereupon the amount thereby agreed to be paid to the sub-contractor is to be retained out of the amount due the original contractor and is to be paid by the post-office department direct to the sub-contractor, and the remainder only is paid, as before, to the original contractor. (Act of May 17, 1878, 20 U. S. Stats. 62, secs. 2 and 3, [Comp. Stats. 1901, p. 2704].) There is a further provision in the act of May 4, 1882, that where a mail contract is sublet for less than the sum fixed in the original contract, the postmaster-general may, at his discretion, cancel the original contract and enter into a contract directly with such sub-contractor. (22 U. S. Stats. 53, [Comp. Stats. 1901, p. 2706].) This, however, did not occur in the present case. The latter statute is stated only to illustrate the intention of the parties.

The following is a statement of the facts alleged in the complaint.

The plaintiffs had two contracts with the United States for the carrying of mails on two certain mail routes, one for thirteen hundred dollars per year and the other for $980 per year, each payable monthly. The contracts were for four years, beginning July 1, 1906, and ending July 1, 1910. The plaintiffs were partners in the livery business at Susanville, where they resided, and they had the necessary outfit of horses and vehicles for carrying the mails and performing the contract. About February 1, 1907, plaintiffs and defendants made an oral agreement that defendants would perform the service of carrying the mails on both said routes for the remaining time of the contracts for the sum of seventeen hundred dollars per year, and that as soon as the consent of the postmaster-general could be obtained the defendants would exe-

cute and deliver to plaintiffs sub-contracts to carry said mails over said routes for the remaining time of the original contracts, which said sub-contracts should specify that the defendants were to receive the same sums as were named in the original contracts, aggregating $2280 a year. It was also agreed that after the execution of said sub-contracts, the defendants would pay over to the plaintiffs each month, out of the moneys received on said contracts, sums amounting to $580 a year, being the difference between the original contract price of $2280 a year and the price of seventeen hundred a year for which defendants agreed to do the service. It was further agreed that, until the sub-contracts were executed, the defendants would carry the mails for the plaintiffs and that plaintiffs would collect the money from the United States and pay the defendants monthly at the rate of seventeen hundred dollars a year. In pursuance of this provisional agreement the defendants began carrying mails on said routes on February 12, 1907. The plaintiffs paid them monthly therefor at the rate of seventeen hundred dollars a year until August 12, 1907. Relying on this oral agreement and on the performance thereof by the defendants, the plaintiffs made important changes in their situation and conditions, to wit: They sold some of their horses and rigs, J. C. Long removed with his family from Susanville to San Luis Obispo County, and George B. Long took the remainder of the partnership outfit pertaining to the livery stable and mail carrying business to Rosebud, Nevada, and there engaged in the livery business and purchased some real estate. The consent of the postmaster-general to the sub-contracts was obtained on July 16, 1907. On August 12, 1907, plaintiffs requested of defendants the execution of the sub-contracts as agreed upon, but the defendants refused to execute the same, abandoned the mail routes, and thereafter refused to carry the mails thereon. Plaintiffs were thereby compelled to resume the carrying of said mails, purchase additional stock for that purpose, transfer their outfit from Rosebud to Susanville, and abandon their property and business in Rosebud. By the refusal to execute the sub-contracts plaintiffs allege they were damaged in the sum of two thousand dollars. By being forced to leave Rosebud, buy more stock and resume the carrying of the mails at Susanville, they allege damage in the fur-

ther sum of fifteen hundred dollars. The findings are that the damage from these causes were, respectively, $1670 and $743, and judgment was thereupon given for $2413.

The answer avers that these several agreements were oral and were, consequently, void, under section 1624 of the Civil Code. The court made no finding as to the fact that they were oral, but it did find the conclusion that they were not void under section 1624. The evidence, however, shows without conflict that they were not in writing and the respondents concede the fact. In our consideration of the case we must therefore assume that the contracts were not in writing, and determine whether or not an action will lie upon an oral contract of this nature.

The principal point made by the respondents in favor of the judgment is that the oral contract was partly performed and that, in consequence thereof, it was taken out of the statute of frauds. This contention cannot be maintained. The case in this particular is not distinguishable from the case of *Seymour* v. *Oelrichs,* 156 Cal. 793, [134 Am. St. Rep. 154, 106 Pac. 88]. In that case the effect of an oral contract between Seymour and the defendants whereby they agreed to employ him for the period of ten years and to put the contract in writing, was considered. Seymour had commenced the employment and had served a number of months thereunder, for which he had received the stipulated compensation. The court declared that such part performance was not sufficient to make a case in equity for the enforcement of a contract of that character. This is the general rule laid down in all the authorities. (20 Cyc. 290.) The contract in question was in substance an agreement whereby the defendants undertook to perform the work which the original contracts required to be done by the plaintiffs. It did not relate to real estate nor to the sale of property, and required nothing but the performance of services. Part performance of such contracts, where entire performance is not to be made within a year, does not take the contract out of the statute. The refusal of the defendants to execute the written contracts does not constitute fraud within the rule that the statute of frauds will not be enforced where the effect would be to perpetrate a fraud. (*Feeney* v. *Howard,* 79 Cal. 529, [12 Am. St. Rep. 162, 4 L. R. A. 826, 21 Pac. 984]; 26 Am. & Eng. Ency. of

Law, p. 52; 20 Cyc. 285; *Chase* v. *Fitz*, 132 Mass. 359; *Wake-field* v. *Greenhood*, 29 Cal. 604; *Glass* v. *Hulbert*, 102 Mass. 24, [3 Am. Rep. 418]; *Caylor* v. *Roe*, 99 Ind. 9; *Fuller* v. *Reed*, 38 Cal. 108.)

In the district court of appeal it was held that the circumstances of the case were such that the defendants were estopped to set up the invalidity of the contract. This was based chiefly on the authority of *Seymour* v. *Oelrichs,* 156 Cal. 793, [134 Am. St. Rep. 154, 106 Pac. 88]. There are essential points in which the facts of that case differ from those in the case at bar. There Seymour was employed in a position for life at a good salary. This fact was known to the other parties and they orally agreed to employ him for a larger salary for ten years and to execute a written agreement to that effect, and they asked him to give up his life position at once and enter their service under said agreement, which he accordingly did. He was thereby induced by them to change his condition by resigning his former position, which he could not regain, and the other parties were aware of this necessity and of the fact that he resigned his former position in reliance upon their agreement and promise. Their knowledge of the necessity of his resignation if he entered their service, and of his reliance upon their agreement as an inducement to resign, were held to be essential to the creation of an estoppel preventing them from repudiating their oral agreement and justifying the court in enforcing it. In the case at bar, it is not alleged that it was necessary for plaintiffs or either of them to leave Susanville when they ceased to carry the mails, or that they informed defendants that they intended to do so, or that they intended to change their residence or condition in any respect because of the proposed transfer, or that the defendants had knowledge of any such necessity or purpose. There is no evidence tending to show these facts, supposing them to have been pleaded, except the testimony of J. C. Long that he told the defendants before making the oral agreement that he had to go away because of his wife's health, and that after the agreement was made they sold two rigs and four horses and took the other equipment away "on the strength of the agreement that we made with the defendants." He did not say that the defendants were informed at the time of making the agreement that they intended to

do this, or that they at that time had such intention, or that J. C. Long would not have gone away for the sake of his wife's health even if they had not made the agreement. There is, therefore, nothing upon which the supposed estoppel can rest.

Section 1973 of the Code of Civil Procedure provides that evidence of a contract which by its terms is not to be performed within a year from the making thereof cannot be received without the writing or secondary evidence of its contents, and that such contract must be in writing to be valid. The defendants objected to the evidence of this agreement, on the ground that it was incompetent evidence of such an agreement. The objection was well taken and it should have been sustained. We do not deem it necessary to discuss or consider the other points suggested by the appellants.

The judgment is reversed.

Angellotti, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.