[Civ. No. 5121. First Appellate District, Division One.—July 16, 1925.]

# H. O. LITTLE, Appellant, v. UNION OIL COMPANY OF CALIFORNIA (a Corporation), Respondent.

[1] PLEADING — INCONSISTENT ALLEGATIONS — SEVERAL COUNTS — DE-MURRER.—A demurrer to a complaint containing two counts on grounds of uncertainties and ambiguities appearing from the fact that certain allegations of one count were inconsistent with those of the other, could not be aided by reference of one count to the other.

[2] CONTRACTS—DELIVERY OF GASOLINE—CERTAINTY.—A writing (alleged as a memorandum of the agreement of the parties for the delivery of certain quantities of gasoline at specified prices) stated with sufficient certainty the essential terms of contract, with the name of the seller and, from the provision therein naming the person to whom delivery should be made, by reasonable inference the name of the buyer.

[3] ID.—TYPEWRITTEN NAME—SUBSCRIPTION TO CONTRACT—INTENT—PLEADING.—In an action upon an unsigned writing (consisting of typewritten and printed matter) calling for delivery of gasoline by defendant to plaintiff, the act of typewriting the name of the defendant in the writing, so far as appears from the complaint, was not intended as the subscription by defendant thereto, where the complaint alleged no facts supporting the conclusion that the typewritten name was intended as a subscription other than that the writing was typewritten by a stenographer in the office of defendant, and from which alone such intention could not fairly be inferred.

[4] ID.—PLEADING—CONCLUSION—SPECIAL FACTS.—It is a general rule that where a conclusion is alleged and also the special facts from which the conclusion is drawn, if the special facts are inconsistent with and do not support the conclusion, the former control, and the sufficiency of the complaint is to be determined from the special facts pleaded.

[5] ID.—ESTOPPEL—REPRESENTATIONS—FRAUD.—Where the essential terms of a contract are shown with reasonable certainty, with representations by the opposite party that its invalidity under the statute will not be asserted, and it appears that the party urging

1.   See 21 Cal. Jur. 65.
4.   See 21 Cal. Jur. 50; 21 R. C. L. 450.
5.   See 10 Cal. Jur. 628; 10 R. C. L. 689.

the estoppel has, pursuant to the contract, in reliance upon and induced by the representations, changed his position, the intention to make such change being known at the time to the one making the representations, and as a result loss or injury is suffered, and the element of fraud appears in the transaction in that the case is one where circumstances and conduct are such as to render it a fraud for the opposite party to assert the invalidity of the contract under the statute, such facts create an estoppel.

[6] ID.—CHANGE OF POSITION.— In such action, the plaintiff, while having relied upon the alleged oral agreement of defendant to deliver gasoline to him for the purpose of his carrying out a contract to deliver gasoline to a third party, did not change his position to his injury where said third party relieved plaintiff from liability on his contract; and plaintiff cannot successfully contend that to permit the defendant to assert the invalidity of the oral agreement would result in a change of his otherwise advantageous position in the market and a consequent loss, because the result of such application of the doctrine of estoppel would be its use as an instrument of gain or profit while its object is protective and limited to saving harmless or making whole the person in whose favor it arises.

[7] ID.—STATUTE OF FRAUDS—ESTOPPEL.—The refusal to carry out a promise to put in writing a contract within the statute of frauds is not such fraud as takes the case out of the statute; and this is ordinarily true even when a party, relying simply on the word, favor or promise of another, has changed his position to his injury on account of it. In all these cases, however, there must be, to avoid an estoppel, an absence of actual fraud.

[8] ID.—PROMISE TO ENTER INTO OR REDUCE TO WRITING AN AGREEMENT WITHIN STATUTE.—An agreement to enter into or reduce to writing and execute an agreement within the statute of frauds is itself within the statute, and neither promise is enforceable unless the statute is satisfied.

(1) 31 **Cyc.,** p. 328, n. 51.   (2) 27 **C. J.,** p. 268, n. 57.   (3) 27 **C. J.,** p. 228, n. 23, 27, p. 289, n. 30.   (4) 31 **Cyc.,** p. 85, n. 38. (5) 27 **C. J.,** p. 338, n. 64.   (6) 21 **C. J.,** p. 1118, n. 99, 2; 27 **C. J.,** p. 338, n. 65.   (7) 27 **C. J.,** p. 303, n. 27,   (8) 27 **C. J.,** p. 335, n. 34; 35 **Cyc.,** p. 623, n. 8.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   Daniel C. Deasy, Judge. Affirmed.

7.   See 12 **Cal. Jur.** 936; 25 **R. C. L.** 701.

The facts are stated in the opinion of the court.

L. L. James, Jr., and C. A. S. Frost for Appellant.

Edwin T. Cooper, Paul M. Gregg and Jerry H. Powell for Respondent.

CASHIN, J.—Action by appellant H. O. Little against respondent Union Oil Company of California, a corporation.

Appellant by his amended complaint alleges in the form of two separate causes of action facts arising from the same transaction. As a first cause of action it is alleged that on August 24, 1923, a writing—in part a printed form used by respondent in the conduct of its business as a dealer in gasoline, and in part typewritten—was caused to be prepared in duplicate by one A. R. Atwood at the office of respondent in San Francisco, California, the writing being in words and figures as follows:

"Memorandum of Agreement.

"Effective date, October 1st, 1923.

"City, San Francisco, Cal.

"Union Oil Company of California.

"Please enter our order for the following products at the prices stated:

"Yearly requirements

"Minimum Maximum

"2,400,000—4,800,000 Gals. of Union Gasoline, deliveries to be made by Union Oil Company of California into the trucks of H. O. Little, in quantities not to exceed one-twelfth of the above amount in any calendar month.

Price of above gasoline to be five cents (5c) per gallon under the prevailing tank wagon market price on date of delivery, on all delivered up to 200,000 gallons per month. If 200,000 gallons per month is exceeded the price on the total month's purchases to be five and one-half (5½c) cents per gallon.

"Upon the following terms and conditions:

"Deliveries: F. O. B. Potrero Plant, San Francisco and to cover a period of one year from date.

"All orders to be filled with reasonable promptness. Delays caused by reason of war, rebellion, insurrection, governmental interference, fires, strikes, differences of workmen, earthquakes, or your inability to make deliveries from whatever cause, excepted. All deliveries to be made in fairly equal monthly shipments.
Terms: ————— ————

"If, during the life of this agreement, our financial responsibility becomes impaired or unsatisfactory to you, cash payment on delivery with the above discount, or satisfactory security may be demanded by you, and it is a condition of further deliveries that such demands be complied with.

"All prices are subject to the addition of any tax that is or may be imposed by municipal, state or federal authority for War, Internal Revenue or other purposes, upon any commodity mentioned herein, and deliveries and shipments are subject to any restrictions or regulations imposed by any municipal, state or federal authority.

"Accepted: ————————— 192—.
                 · "Union Oil Company of California——————
                                                    ————————."

"By————————

The portions typewritten, with the exception of the place therein provided for delivery, to wit, "Potrero plant, San Francisco," in the third paragraph, and the place and date of making the writing were, the first and second paragraphs thereof, as shown by photostatic copy of the writing filed · by stipulation as a supplement to the transcript on appeal. It is further alleged that the writing contained all the promises and conditions to be kept and performed by plaintiff and defendant, and that, in the words of the pleading, "plaintiff and defendant then and there intended said typewritten agreement to be then and there mutually operative and binding on each other, and intended that the names of plaintiff and defendant typewritten therein should be and be deemed to be a subscribing by them of said agreement and authentication thereof, and in that behalf plaintiff alleges . . . " Appellant then proceeds to allege the circumstances of the transaction and the conversation between himself and Atwood preceding and following the preparation of the writing, from which his conclusion as to the intention of the respondent as above quoted is drawn and which allega-

tions are as follows: That respondent on the date mentioned had in writing authorized Atwood to execute on its behalf an agreement with appellant for the sale to him of the gasoline described upon the terms and conditions set forth in the writing, such being the subject, terms and conditions of an oral offer by appellant made on that day and orally accepted by Atwood.

That at the time of such oral acceptance appellant was negotiating with an organization known as the Garage Owners' Association for the sale and delivery by him to it of the quantities of "Union" gasoline mentioned in the writing at a net profit to appellant over the price mentioned therein of one and one-quarter cents per gallon.

That on said date and before the acceptance of the offer by Atwood appellant had informed Atwood of the terms of his proposed agreement with the association, stating that he desired the immediate execution of the writing; that he might on the evening of that day execute the agreement with the association, that the hour was then late and that it was necessary for him to procure from his attorney drafts of the proposed agreement before his meeting with the association that evening; that Atwood then stated that appellant should, in the words of the pleading, "hurry to his attorney's office, there get said forms of contract with said Garage Owners' Association and go ahead and execute his said proposed contract with said Garage Owners' Association that evening; that said *typewritten* agreement was effective and was all that was necessary to enable plaintiff to sign up with said Garage Owners' Association," thereupon delivering a duplicate of the writing to appellant and retaining the original thereof, neither the original nor the duplicate being signed by the manual subscription of either party. That appellant received the writing so delivered in the belief that such was a concluded and mutually binding agreement between himself and respondent, and, acting on such belief and the representations of Atwood, executed on the same day the proposed contract mentioned above with the association. That respondent was the sole producer of "Union" gasoline; that appellant has performed the terms and conditions contained in said writing by him to be performed, and that respondent refused to perform. That due to such refusal appellant was unable to perform his contract with the association or

to purchase Union or other gasoline at a price *equal to or below* the price provided in the writing, to his damage in the sum of $60,000.

As a second cause of action are alleged the same facts as above with the exception of the allegation that the names of the parties *typewritten* therein were deemed to be a subscription by them thereto, and with the further allegation that Atwood at the time of the delivery of the writing stated that he would subscribe his name thereto as agent for respondent later in that week and which he afterwards refused to do, stating that he had instructions from respondent not to go further with appellant.

It is not alleged that the name of respondent *printed* below the typewritten and printed portions of the writing containing the description of the subject, the price, the terms and conditions of the alleged contract, was intended to constitute or was adopted as a subscription by respondent thereto.

Respondent demurred generally and specially to the complaint and each count thereof, and moved to strike out the allegations hereinbefore mentioned. The motion as to all the allegations above except that respondent was the sole producer of "Union" gasoline, the demand for and the refusal of performance and the damage alleged, was granted, and the demurrer sustained without leave to amend. Judgment was thereupon entered for respondent and the appeal is taken therefrom. No application for leave to further amend so far as shown by the record was made.

Appellant contends that the first cause of action states facts which sustain his conclusion that it was the intention of respondent to adopt its name *typewritten* in the writing as a subscription thereto, that the question of such intention was one for the jury, and that the facts alleged estop respondent from asserting that the writing was invalid under the statute of frauds; that the motion to strike was improperly granted and that the demurrer should have been overruled.

[1] Certain grounds of respondent's special demurrer to the complaint as a whole and to the separate counts therein were the uncertainties and ambiguities appearing from the fact that certain allegations of one count were inconsistent with those of the other. The form of pleading adopted by appellant has been approved and a demurrer on the grounds

stated could not be aided by reference to other counts in the complaint (*Stockton etc. Works* v. *Glens Falls Ins. Co.,* 121 Cal. 167 [53 Pac. 565]; *Cameron* v. *Ah Quong,* 175 Cal. 377, 382 [165 Pac. 961]; *Froeming* v. *Stockton etc. Ry. Co.,* 171 Cal. 401, 404 [Ann. Cas. 1918B, 408, 153 Pac. 712]).

[2]   The writing alleged as a memorandum of the agreement of the parties stated with sufficient certainty the essential terms of contract, with the name of the seller and, from the provision therein naming the person to whom delivery should be made, by reasonable inference the name of the buyer (*Sanborn* v. *Flagler,* 9 Allen (Mass.), 474, 476).

[3]   It is clear from the pleading that the act of typewriting the name of respondent in the writing was not intended as the subscription by respondent thereto, no facts being alleged supporting such conclusion other than that the writing was typewritten by a stenographer in the office of respondent, and from which alone such intention could not fairly be inferred.

While no California case directly in point has been called to our attention, it is the rule in other jurisdictions, and the case of *California Canneries Co.* v. *Scatena,* 117 Cal. 447 [49 Pac. 462], is authority for the conclusion that a subscription by a party to be charged need not be at the end of the writing, but the intention being shown such signature placed on any part of the writing is sufficient to satisfy the requirements of the statute, and that the words ''signed'' and ''subscribed'' are in meaning substantially the same except where in a statute some peculiar or additional meaning to either of the words is indicated.

The majority of cases in other jurisdictions hold that the signing required by statute is a signature to the memorandum placed there or adopted or appropriated with the intention of authenticating the writing, but that the statute is not satisfied by the writing, printing or stamping of the name of a party to the contract by him or by his authority, or by the adoption or appropriation of a name not for the purpose of signing and authenticating the instrument but for some other purpose (27 Cor. Jur., p. 288, sec. 357).

If it was not the intention of respondent's agent to adopt or appropriate the name *printed* in the form shown at the end of the writing as its signature thereto, the form of acceptance so printed being obviously for the purpose of en-

abling its agent to authenticate agreements of this character, —and appellant's pleading negatives such intention—it is not in our opinion a fair or reasonable inference from the circumstances and conversation alleged that its name *typewritten* therein as a part of a clause providing that deliveries should be made by it into the trucks of appellant and the quantities of gasoline so to be delivered each month, was intended by its agent to be adopted or appropriated as an authentication thereof.

All that might reasonably be inferred therefrom in view of the fact that the whole transaction took place in the office of respondent, where the signatures of both could have been attached without appreciable delay, was the intention of the agent to assure appellant that the invalidity of the writing would not be asserted by respondent, and that the oral acceptance of the offer made would suffice as an effective and binding agreement between them.

[4] It is a general rule that where a conclusion is alleged and also the special facts from which the conclusion is drawn, if the special facts are inconsistent with and do not support the conclusion, the former control, and the sufficiency of the complaint is to be determined from the special facts pleaded (*Ohm* v. *San Francisco,* 3 Cal. Unrep. 314, 318 [25 Pac. 155]; *Horton* v. *Travelers' Insurance Co.,* 45 Cal. App. 462 [187 Pac. 1070]; 31 Cyc. 85; *Wright* v. *State,* 104 Okl. 57 [230 Pac. 268]; *Heinzman* v. *Whiteman* (Ind.), 139 N. E. 329; *Wood* v. *Pynetree Paper Co.,* 29 Ga. App. 81 [114 S. E. 83]; *First Nat. Bank* v. *Grow,* 57 Mont. 376 [188 Pac. 907]; *Phillips* v. *Bermeule,* 88 N. J. Eq. 500 [102 Atl. 695]; *United States* v. *Union Pac. Ry. Co.,* 169 Fed. 65 [94 C. C. A. 433]; *Lovell* v. *Marshall* (Minn.), 202 N. W. 64; *Louisville & U. R. Co.* v. *National Bank,* 188 Ala. 109 [65 South. 1003]; *Gymther* v. *Brown,* 67 Or. 310 [134 Pac. 1186]; *Koehler* v. *Wilson,* 144 App. Div. 473 [129 N. Y. Supp. 532, 534]).

[5] Where the essential terms of a contract are shown with reasonable certainty, with representations by the opposite party that its invalidity under the statute will not be asserted, and it appears that the party urging the estoppel has, pursuant to the contract, in reliance upon and induced by the representations, changed his position, the intention to make such change being known at the time to the one

making the representations, and as a result loss or injury is suffered, and the element of fraud appears in the transaction in that the case is one where circumstances and conduct are such as to render it a fraud for the opposite party to assert the invalidity of the contract under the statute, such facts create an estoppel (*Long* v. *Long,* 162 Cal. 427 [122 Pac. 1077]; *Seymour* v. *Oelrichs,* 156 Cal. 782 [134 Am. St. Rep. 154, 106 Pac. 88]).

Appellant's claim of damages suffered is based upon the anticipated profit of $1\frac{1}{4}$ cents per gallon on the resale of the quantities of gasoline mentioned in the writing, to wit, 4,800,000 gallons. It is not alleged that the profit anticipated from performance of the contract with the association would have been greater than from a resale of the gasoline in the open market, or that appellant could not have procured the same quantity, kind and quality at any price between the price mentioned in the writing and the selling price to the association. The change of position alleged as a ground of estoppel was the assumption of an obligation to deliver the above quantities to the association, the violation of which resulted in no loss, the association, as alleged in the complaint, having relieved appellant from liability thereon. This obligation was the consideration for the promise of the association to purchase, which promise was not procured until after the representations alleged were made.

While the act of the association restored appellant to his original position, in that he was relieved from obligation and suffered no loss therefrom, the act in its effect caused a second change in the position of appellant in the loss of the benefit of the obligation of the association. The latter change, however, was not the result of the representations alleged, but the consequence of defendant's refusal to perform.

[6] Appellant's position, in view of the facts pleaded, is that of one who, while he has relied on representations which, the other elements being present, would result in an estoppel, has not changed his position to his injury; but, the general market conditions being such that a resale at a profit is certain, he contends that to permit the seller to assert the invalidity of the oral agreement would result in a

change of his otherwise advantageous position in the market and a consequent loss.

The result of such application of the doctrine would be its use as an instrument of gain or profit while its object is protective and limited to saving harmless or making whole the person in whose favor it arises (21 Cor. Jur., p. 1118; *Adler* v. *Pin,* 80 Ala. 351; *Lindsay* v. *Cooper,* 94 Ala. 170 [33 Am. St. Rep. 105, 16 L. R. A. 813, 11 South. 325]; *Ramsey* v. *Chilson,* 57 Cal. App. 785, 788 [208 Pac. 319]).

Appellant alleges in the second count of the complaint that the agent of respondent, following the conversation hereinbefore set forth, agreed to subscribe the writing on behalf of respondent later during the same week.

As the rule is stated in 12 California Jurisprudence, Statute of Frauds, section 104, page 935, the mere fact that one acts on an oral promise hoping that it will be carried out by the promisor does not estop the latter. So as a general rule the mere omission, coupled with performance, is insufficient to create an estoppel. [7] The refusal to carry out a promise to put in writing a contract within the statute is not such fraud as takes the case out of the statute; and this is ordinarily true even when a party, relying simply on the word, favor or promise of another, has changed his position to his injury on account of it. In all these cases, however, there must be, to avoid an estoppel, an absence of actual fraud (*Seymour* v. *Oelrichs, supra; Long* v. *Long, supra*).

[8] An agreement to enter into or reduce to writing and execute an agreement within the statute of frauds is itself within the statute, and neither promise is enforceable unless the statute is satisfied (27 Cor. Jur., p. 355; *Fuller* v. *Reed,* 38 Cal. 99).

A fraudulent intent in making the representations or in refusing to perform, or that respondent took advantage of the information imparted by appellant to its agent, was not alleged in the complaint.

Notwithstanding the absence of actual fraud a representation of a future intention absolute in form, deliberately made for the purpose of influencing the conduct of the other party and acted upon by him, is generally the source of a right and may amount to a contract enforceable in a court of equity (*Seymour* v. *Oelrich, supra*). As held, however, in the case last cited and in *Standing* v. *Morosco,* 43 Cal. App.

244, 246 [184 Pac. 954], the person to whom the representa-
tion or promise is made must have so altered his position as
that he would be made to suffer loss or unconscionable in-
jury. If no such injury or loss is shown the rule of estoppel
fails and the excepted case is not established.

It is our conclusion that the facts alleged were not suffi-
cient to constitute a cause of action, that the judgment
should be affirmed, and it is so ordered.

Knight, J., and Tyler, P. J., concurred.

A petition by appellant to have the cause heard in the
supreme court, after judgment in the district court of ap-
peal, was denied by the supreme court on September 10,
1925.