## STAFFORD v. THE CITY OF OSKALOOSA.

1. **Cities and Towns:** DILIGENCE REQUIRED OF IN CARE OF STREETS. Cities and towns are charged with the duty of keeping their streets in reasonable repair, and the difficulties that may attend the performance of that duty will not relieve them of it, but will rather increase the diligence required of them in that regard.

2. ———: WHAT WIDTH OF STREET TO BE KEPT IN REPAIR: ESTOPPEL. If the improvement of a city street is such as to prepare it for travel with teams throughout its entire width, it is the duty of the city to keep the whole width of it in safe condition for such travel; and it cannot be heard to say that the purpose was that only a portion of it should be so used.

3. **Expert Testimony:** WHEN NOT ALLOWED. Where no question of science or skill is involved in the inquiry, but the judge or jurors, when informed as to the facts of the case, can determine the ultimate question quite as well as the witness, the opinions of the witness cannot be admitted.

4. **Contributory Negligence:** VERDICT SUPPORTED BY EVIDENCE. The question of contributory negligence in this case having been fairly submitted to the jury, their finding, being warranted by the evidence, will not be disturbed on appeal.

5. **Cities and Towns:** PERSONAL INJURY FROM ENCUMBERED STREET: MEASURE OF DAMAGES: INSTRUCTION. In an action for a personal injury caused by an obstruction in defendant's street, the court instructed the jury that, if the plaintiff was entitled to recover in any sum, "he may receive all the damages proceeding continuously from the injury sustained up to the present time, and also such as it is reasonably certain he will continue to suffer in the future," and that they "should consider plaintiff's occupation, business or profession, and the extent and value of his business at the time of his injury, and the effect of such injury, if any is shown, upon his ability to pursue his calling and business, and all the proximate consequences of the injury received by the plaintiff, if you find any from the preponderance of the evidence, through the negligent act of the defendant, and, without prejudice or feeling, in your sound discretion as jurors, simply endeavor to compensate him for the loss." *Held* not objectionable as a statement of the rule for the measure of damages. *Fry v. D. & S. W. R'y Co.*, 45 Iowa, 416, distinguished.

6. **Evidence:** OF DOUBTFUL MATERIALITY: RIGHT TO REBUT. After defendant had introduced evidence upon a point of doubtful or slight materiality, it could not complain that plaintiff was allowed to introduce rebutting evidence on the same point.

7. **Practice**: USE OF DIAGRAM IN ARGUMENT. There was no error in permitting counsel, in the course of his argument to the jury, to exhibit to the jury a drawing, not introduced in evidence, for the purpose simply of illustrating what counsel claimed the evidence showed.

8. **Personal Injury**: POVERTY OF PLAINTIFF AS AFFECTING DAMAGES. Where, in an action against a city on account of personal injuries sustained by reason of an impediment in the street, it was shown that plaintiff was permanently disabled, so that he could no longer earn a livelihood by the practice of his profession as a physician, it was competent to show that he had no other means of support. *Hunt v. The C. & N. W. R'y Co.*, 26 Iowa, 363, and *Moore v. Central Railway*, 47 Id., 689, followed.

REED and ADAMS, J. J., *dissenting.*

## *Appeal from Poweshiek Circuit Court.*

WEDNESDAY, JULY 23.

THIS action is prosecuted by plaintiff to recover damages in consequence of a personal injury sustained by him, as he alleges, in consequence of the negligence of the defendant in permitting an obstruction to remain in one of its streets. There was a verdict and judgment for plaintiff in the circuit court, and defendant appeals.

*F. M. Davenport*, and *Lafferty & Needham*, for appellant.

*John F. Lacey*, and *Bolton & McCoy*, for appellee.

REED, J.—I. The accident in which plaintiff sustained the injuries complained of occurred in December, 1878.

1. CITIES and towns: diligence required of in care of streets.

Plaintiff and one Clark were riding in a sleigh, drawn by a single horse driven by Clark. The sleigh was upset at the corner of High and Marion streets, and plaintiff was thrown violently on the ground, sustaining a fracture of the neck of the left thigh bone. High and Marion streets cross each other at right angles, the former running east and west, and the latter north and south. There are crossings over Marion street on the south side of High, and over High on the east side of Marion. Some months before the accident the street commissioner of defendant, in cleaning these crossings, threw the mud and earth

taken from them into a pile north of the crossing over Marion street. At the time of the accident this earth formed a a mound about five feet wide at the base, and about one foot high at the center, and it was frozen solid and covered with snow.

Plaintiff and Clark came from the south on Marion street, and were in the act of turning to the east into High street, when, as the evidence tends to show, the runner on the right-hand side of the sleigh struck this mound, and the sleigh was upset.

The evidence shows that the mound was situated about twenty-two feet and six inches from the corner of the block lying in the angle of the two streets, and that it was about two feet outside of the beaten track ordinarily followed by vehicles passing from one street into the other.

The first position taken by counsel for appellant is, that it was not negligence on the part of the city to permit this mound to remain in the street. The claim is that the soil of which the streets of the city are composed is of such a character as that accumulations of earth, quite as dangerous to travel as the mound in question, are liable to occur at every crossing in the city from the ordinary use of the streets, at any time when they are muddy, and that to require the city to provide against them is to impose an unreasonable and very onerous burthen upon it.

The defendant, however, is charged with the duty of keeping its streets in reasonable repair, and the difficulties that may attend the performance of that duty will not relieve it from the performance of it. They have the effect rather to increase the diligence required of it in its performance.

If the mound was an obstruction in the street, if it interfered with the safety of travel on the street, it was clearly the duty of defendant to remove it. Whether it was such obstruction is a question of fact, and the finding of the jury on the question is sustained by the evidence.

II. When the case was before this court on a former appeal, we approved an instruction given the jury on the trial, to

2. ——: what
width of
street to be
kept in re-
pair : estop-
pel.

the effect that it was the duty of the city to keep its streets which are open to public use in a reasonably safe condition for the entire width thereof between the sidewalks. See 57 Iowa, 748. The circuit court gave substantially the same instruction on the last trial. Appellant assigns the giving of this instruction as error. It is contended that the evidence on the last trial tended to bring the case within the rule that when, in the improvement of a highway, a path of sufficient width for the accommodation of the travel has been constructed, the public corporation charged with the duty of keeping it in repair performs that duty when this traveled way is kept free from obstructions which endanger the safety of traveling thereon.

We think, however, that under the evidence the duty of the city is correctly stated in the instruction. The original surface of the streets, at the place where the accident occurred, was level. There was a sidewalk on each side of High street and on the east side of Marion street, and immediately outside of these sidewalks were open ditches constructed for purposes of drainage. The crossings were constructed of stone in the middle of the street, with plank extending from the stones to the sidewalks, spanning the ditches. The streets had been graded up slightly in the center, but there was nothing to confine the travel to the highest part of the street, nor was there anything in the character of the improvement to indicate that it was the intention of the city that it should be so confined. No portion of the streets were paved or macadamized, and they were open to travel for their whole width between the ditches. Vehicles passing on the highest part of the grade and over the stone portions of the crossing would not strike the mound, it is true, but there was nothing to confine them to that portion of the street, and a very considerable part of the travel passed over the portions of the street between the ditches and the top of the grade, and over the plank portions of the crossings. Under the circumstances, we think it cannot be claimed that the city was released from

the duty of keeping the streets in repair for the entire width thereof between the ditches.

For the purpose, as is claimed, of bringing the case within this rule, the defendant asked a witness the following question: "State whether that portion of the street at that time, at that place where the plank crossing was, was worked or prepared, or intended to be prepared, by the city as a portion of the street for public travel with teams." This question was objected to as incompetent and immaterial, and as asking for the opinion of the witness. The objection was sustained, and this ruling is assigned as error. The ruling is correct. The question whether the city was bound to keep the whole width of the street in repair was to be determined from the character of the improvements made upon it, rather than from any intent with which such improvements were made.

If the work done on the street prepared it for travel with teams throughout its entire width, and nothing was done to exclude travelers from using any portion of it, the city cannot be heard to say that its purpose was that but a portion of it should be so used. Besides this, the question called for the opinion of the witness, and the subject of the inquiry was not one upon which an opinion of the witness could be given in evidence. No question of science or special skill was involved in the inquiry, but the judge or jurors, when informed as to the facts of the case, could determine the ultimate question quite as well as the witness. A number of other questions of the same character were asked, but they were all properly excluded.

3. EXPERT testimony. when not allowed.

III. Appellant insists that plaintiff was guilty of such contributory negligence as defeats his right of recovery. The claim is that neither he nor Clark gave that attention to the surroundings which ordinary prudence demanded, and, if they had used such ordinary precaution, they could have seen the mound and avoided the danger. The question, however, was fairly

4. CONTRIBUTORY negligence : verdict supported by evidence.

submitted to the jury, and we think their finding is warranted by the evidence.

IV.   In an instruction on the measure of plaintiff's damages, the jury was told that if he was entitled to recover in any sum "he may receive all the damages proceeding continuously from the injury sustained which he has suffered up to the present time, and also such as it is reasonably certain he will continue to suffer in the future." Appellant assigns as error the giving of the portion of the instruction just quoted. The objection urged by counsel is, that the jury are not restricted by the language of the instruction to the evidence, in making the assessment of damages on account of future pain and suffering, but are permitted to make such assessment on mere conjectures.   The evidence introduced on the trial shows as clearly, perhaps, as it can be shown in any case, the inconvenience and suffering which plaintiff will sustain in the future in consequence of the injury.

*5. CITIES and towns: personal injury from incumbered street: measure of damages: instruction.*

He is permanently crippled.   He can go about only by using crutches, or some other support.   His ability to practice his profession is greatly impaired, if not entirely destroyed, and he will in all probability suffer almost constant pain from the injury.   The jury had been previously told, in effect at least, that if plaintiff recovered his recovery must be based on the evidence and the rules of law contained in the instructions, and, in the portion of the instruction immediately following the language objected to, they are told that they "should consider plaintiff's occupation, business or profession, and the extent and value of his business at the time of his injury, and the effect of such injury, if any is shown, upon his ability to pursue his calling and business, and all the proximate consequences of the injury received by the plaintiff, if you find any from the preponderance of the evidence, through the negligent act of defendant, and, without prejudice or feeling, in your sound discretion as jurors, simply endeavor to compensate him for the loss."   When the instruction is considered

as a whole, it is not objectionable. The jury are told, in effect, that the damages ought to be assessed with the view of compensating plaintiff for the loss and suffering which resulted to him in consequence of the injury, and that this loss and suffering should be determined from the evidence. They are also told that such consequences as it was reasonably certain would result to him in the future from the injury should be considered, and damages awarded therefor. The evidence showed what these future consequences will be, and the jury could not have understood that any other matters except those were to be considered in assessing the damages. There is no similarity between this case and *Fry v. The D. & S. W. R. Co.*, 45 Iowa, 416, cited by appellant. The facts of the two cases are materially different, and, when the whole instruction given in this case is considered, it is not subject to the objection urged against the one given in that case, and which is there held to be erroneous.

V. Defendant introduced evidence on the trial tending to prove that Clark's general habit as a driver was reckless; that

6. EVIDENCE: of doubtful materiality: right to rebut.

it was his common custom to drive very fast, and to go over the street crossings without slacking the speed of his horse, and that he had met with accidents similar to the one in question on other occasions, and that these accidents resulted from his reckless manner of driving. In rebuttal, plaintiff offered evidence tending to prove that Clark was a skillful driver. This was objected to by defendant; the objection was overruled, and this ruling is assigned as error.

The question to be determined by the jury was, whether at the time of the accident Clark was using ordinary care. Neither his usual manner of driving nor his general character as a driver could have much weight in determining the question. The one fact, however, is quite as pertinent to the inquiry as the other, and, as defendant went into the inquiry as to his general manner of driving, it cannot complain that

plaintiff was permitted to show that he was a competent and skillful driver.

VI.   Plaintiff's counsel, who made the closing argument to the jury, was permitted by the court, against defendant's objection, to prepare a drawing, showing the size and shape of the mound, as he claimed the evidence showed it to be, and to exhibit the same in the presence of the jury, and base his argument thereon; and the action of the court in permitting this is assigned as error.   As the drawing showed the size and shape of the mound as it was claimed the evidence showed it to be, there was no error in permitting it to be used. The objection urged against its use was that it had not been identified or introduced in evidence.   But it was not offered or used as evidence.   It was used simply to illustrate what it was claimed the evidence showed.

*7. PRACTICE: use of diagram in argument.*

VII.   Plaintiff was examined as a witness in his own behalf.   He testified that he is a physician; that he was about fifty years old at the time of the accident; that he had then been practicing his profession for about twenty-five years, and that his yearly earnings in his practice were over three thousand dollars.   He also testified that since the injury, which occurred some four years before the trial, he had not been able, owing to the injury, to engage in the active practice of his profession, and his testimony, as well as that of other physicians who were examined on the trial, shows that this disability is probably permanent.

*8. PERSONAL injury: poverty of plaintiff as affecting damages.*

He was allowed to testify, over defendant's objection, that he had no other means of support except his earnings in his practice.   The objection urged against the admission of this testimony is that it is incompetent and immaterial.

In *Hunt v. C. & N. W. R. Co.*, 26 Iowa, 363, and *Moore v. The Central Railroad*, 47 Id., 689, and in *Simonson v. The C., R. I. & P. R. Co.*, 49 Id., 87, evidence of this same character was admitted by the trial court, and the rul-

ings were approved by this court. The ruling in the two cases first named is placed on the ground that the fact that the parties were dependent on their earnings for support was proper for the consideration of the jury, and the fact that they were poor tended to establish such dependence.

In *Simonson's* case, it is put on the ground that the fact that the party was poor "was a circumstance which the jury might properly consider in regard to the probable continuance of his industry."

But in the subsequent case of *Beems v. C., R. I. & P. R. Co.*, 58 Iowa, 150, it is held by a majority of the court that evidence of the number of intestate's family, although offered simply as a circumstance tending so stimulate his industry and economy, was incompetent. The majority of the court, as now constituted, are content to adhere to the holding in *Hunt v. The C. & N. W. R. Co.*, and *Moore v. The Central Railroad*, and the grounds on which the holding is placed.

In this conclusion the writer of this opinion does not concur. Although the case of *Beems v. The C., R. I. & P. R. Co.* does not in express terms overrule the *Simonson* case, it certainly throws doubt upon it, and, in my opinion, the ground upon which the holding is placed in the other cases is not tenable, and they ought not to be adhered to. The fact that plaintiff is dependent on his earnings for support does not, in my judgment, affect his right to recover, or the measure of his damages. The relief which the law affords the injured party in cases of this class is compensation for the loss and suffering which he endures in consequence of the injury. If in consequence of the injury he is disabled for a time from following his vocation, he is entitled to recover for this loss a sum equal to what his earnings would have been had the injury not occurred. And, if the injury has the effect to impair permanently his ability to work and earn money, his damages would include compensation for this loss of power. In determining the extent of his loss in either case, the business or employment in which he was engaged, and the amount

of his earnings therein, must be considered. But it is entirely immaterial whether he depended on his earnings for support or not. The plaintiff in this case had the right to practice his profession and to enjoy such pecuniary advantages as might arise from his practice. He had the right to avail himself of whatever of profit might arise from the exercise of the skill and learning which he had acquired in his profession by his years of practice and study. And if by the negligence of the defendant his ability to earn money by the exercise of those acquirements has been impaired or destroyed, he has the right to be compensated in damages for this loss of power; and neither his right to compensation, nor the amount to which he is entitled, depends on the question whether there is any necessity for him to earn money by that means or not. If by the negligent act of defendant a valuable property belonging to him had been destroyed, the amount of damages which ought to be awarded him as compensation for the injury would not be affected by the fact that the property destroyed was the whole of his possessions, or that the income derived from it was his only means of support. The measure of his damages in that case would be simply the value of the property destroyed. And the case before us, as I think, is not different in principle from that. The law recognizes that he has a property right in his power to so exercise his skill and learning as to derive a profit from their use, and it will award him as damages for the wrongful destruction of his power in this respect such sum as will be a just compensation for its loss. In doing this, it will endeavor to determine the pecuniary value of this power, and this value will be the amount of his damages,

As the evidence objected to had no tendency to establish either one of the ultimate facts which plaintiff was required to prove in making out his case, I think it should have been excluded, and, because of its admission, I think the judgment

of the circuit court should be reversed. But the majority think otherwise, and the judgment is accordingly

AFFIRMED.

ADAMS, J., *dissenting.*—I concur with Mr. Justice REED in the opinion that the court erred in allowing evidence to be introduced in regard to plaintiff's pecuniary condition. I think that the case falls substantially within the ruling of *Beems v. The C., R. I. & P. R. Co.*, but I think that that case, as well as the case at bar, can be distinguished from those in which it has been held that evidence of the injured person's pecuniary condition was admissible.