[S. F. No. 10600. In Bank.—December 2, 1925.]

FRANCES L. O'BRIEN, Respondent, v. E. S. O'BRIEN, Appellant.

[1] EQUITY — HE WHO SEEKS EQUITY MUST DO EQUITY — QUIETING TITLE.—The maxim of equitable jurisprudence that "He who seeks equity must do equity" means that the court will not confer its equitable relief upon one seeking its interposition and aid unless he has acknowledged or conceded, or will admit and provide for, all the equitable rights, claims, and · demands justly belonging to the adverse party, and growing out of or necessarily involved in the subject matter of the controversy; and this principle of equity is applicable to an action to quiet title.

[2] QUIETING TITLE — CLAIMS OF DEFENDANT — PLEADING. — If the defendant claims an interest in the property the title to which is sought to be quieted, or if he claims that the plaintiff has placed him in such a position as to render it inequitable to grant to the plaintiff the relief sought, he must set forth his claim or demand in an appropriate pleading.

[3] STATUTE OF FRAUDS — AGREEMENTS TO DEVISE OR BEQUEATH — AGREEMENT UPON CONSIDERATION OF MARRIAGE.—By the amendment

1. See 10 Cal. Jur. 508; 10 R. C. L. 392.
2. See 22 Cal. Jur. 158.
3. Promise in consideration of marriage as within statute of frauds, notes, 10 A. L. R. 321; 21 A. L. R. 306. See, also, 12 Cal. Jur. 898; 25 R. C. L. 447; 28 R. C. L. 65.

of 1905, adding subdivision 7 to section 1624 of the Civil Code, and by the corresponding provision of subdivision 7 of section 1973 of the Code of Civil Procedure as amended in 1907, an agreement to devise or bequeath any property, or to make any provision for any person by will, is invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or his agent; and an agreement made upon consideration of marriage other than a mutual promise to marry is invalid unless likewise in writing as provided by subdivision 3 in each of said code sections.

[4] ID. — ORAL CONTRACTS — PART PERFORMANCE. — Neither subsequent marriage nor the execution of a will pursuant to an oral antenuptial agreement to make a will is such part performance as will relieve the oral contract from the operation of the statute of frauds.

[5] ID.—VOIDABLE CONTRACTS—REPUDIATION.—A contract falling within the operation of the statute of frauds, but made in contravention thereof, is not invalid in the sense that it is void. It is merely voidable, and the sole effect of the statute is to render it unenforceable by one party against the will of the other who abandons or repudiates it.

[6] ID.—MARITAL CONTRACT—ORAL AGREEMENT TO DEVISE PROPERTY— PART PERFORMANCE.—Assuming that sufficient part performance of a parol agreement to devise or bequeath property otherwise unenforceable under subdivision 7 of section 1624 of the Civil Code may take the contract out of the statute, the acts of the parties alleged to be sufficient part performance must be referable to the covenants of the contract other than the covenants of the marital contract of the parties.

[7] ID.—REFUSAL TO REDUCE TO WRITING—FRAUD.—The mere promise of the plaintiff to reduce the contract to writing and her failure or refusal to do so did not constitute fraud.

[8] ID.—SPECIFIC PERFORMANCE—MUTUALITY OF REMEDY—EQUITY—INJUNCTION.—Equity will not require the specific performance of a contract where the party seeking its enforcement cannot from the nature of the contract be compelled specifically to perform on his part; nor is the court authorized to issue an injunction to restrain the breach of said contract.

[9] CONTRACTS—BREACH OF PRENUPTIAL AGREEMENT TO WILL PROPERTY — INTERRUPTION OF MEDICAL PRACTICE — MEASURE OF DAMAGES.—In an action by the surviving husband against the repre-

---

5.  See 12 Cal. Jur. 922; 25 R. C. L. 691.

7.  See 12 Cal. Jur. 936.

8.  Mutuality of remedy as essential to specific performance, notes, 50 L. R. A. 506; 31 L. R. A. (N. S.) 496; L. R. A. 1915D, 301. See, also, 23 Cal. Jur. 445; 25 R. C. L. 232.

sentative of his deceased wife's estate for damages for breach of an oral prenuptial agreement whereby the wife agreed to devise and bequeath certain properties to the husband, in consideration of his abandoning his medical practice, and marrying her and assisting in the care and management of her properties, the measure of damages is the value of the property agreed to be so devised and bequeathed.

[10] ID. — INTERRUPTION OF PROFESSIONAL PURSUITS — MEASURE OF DAMAGES.—The measure of damages accruing to a physician and surgeon by reason of the interruption of his medical practice is an amount which will compensate him for the detriment he has suffered on account of his change of position; and in order that the amount thereof be properly ascertainable it is necessary for him to allege facts from which when proved the court may properly fix the amount.

[11] ID. — MEASURE OF DAMAGES — PLEADING — SPECIAL DEMURRER — JUDGMENT.—In an action by the husband against the wife for damages for repudiation by the latter of her prenuptial agreement to devise and bequeath certain properties to the former in consideration of his abandoning his medical practice, and marrying her and caring for and managing her properties, pleadings by the husband to the effect that in reliance upon the said prenuptial agreement he gave up a remunerative practice of medicine and surgery in a given locality for another practice at another place which was less lucrative and agreeable, but which fail to allege his age, so that the court might properly receive proof of his expectancy, and which utterly fail to advise the court or the adverse party as to the revenues from his present practice, which practice it may be reasonably inferred has been carried on for many years—conclusions only and not facts being alleged—are subject to special demurrers directed to the absence of the allegations of facts which would advise the wife and the court of something more than mere opinion on matters so vital to the husband's cause and his alleged loss of business; and where the husband presents six different pleadings to the court wherein objections are successfully made to their sufficiency, and upon his failure to request leave to further amend, the court is justified in rendering judgment against him.

---

(1) 21 C. J., p. 172, n. 13, p. 174, n. 19, p. 175, n. 21; 32 Cyc., p. 1379, n. 82, p. 1483, n. 14. (2) 32 Cyc., p. 1360, n. 22 New. (3) 27 C. J., p. 127, n. 55, p. 208, n. 80 New, 82. (4) 27 C. J., p. 346, n. 27. (5) 27 C. J., p. 310, n. 4. (6) 27 C. J., p. 347, n. 41. (7) 27 C. J., p. 303, n. 27; 36 Cyc., p. 569, n. 85 New, p. 622, n. 19. (8) 32 C. J., p. 194, n. 33; 36 Cyc., p. 600, n. 19. (9) 40 Cyc., p. 1073, n. 40. (10) 40 Cyc., p. 1072, n. 28. (11) 31 Cyc., p. 358, n. 3; 40 Cyc., p. 1072, n. 28.

APPEAL from a judgment of the Superior Court of Alameda County. James G. Quinn, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. C. Chapman, James F. Peck, W. B. Bunker, C. M. Peck and Peck, Bunker & Cole for Appellant.

Elston, Clark & Nichols and Clark, Nichols & Eltse for Respondent.

SHENK, J.—Plaintiff brought this action to quiet her title to a parcel of land located at the northwest corner of 12th and Jackson Streets, in the city of Oakland. Demurrers to the fifth amended answer and cross-complaint were sustained. No request for leave to further amend was made by the defendant. Judgment was accordingly entered against him and in favor of the plaintiff, from which judgment the defendant appeals.

The complaint is in the usual form in an action to quiet title. The answer denies that the defendant's claim of an interest in the property is without right and alleges in substance as follows: That on March 10, 1914, and for more than twenty years prior thereto, the defendant was and had been a duly licensed practitioner of medicine and surgery in the county of Merced and adjoining counties; that he frequently had been employed in a professional way by the plaintiff and by W. H. Hartley, her deceased husband; that for several years prior to 1914 the defendant had received from his medical practice from seven to twelve thousand dollars net per annum; that his practice was steadily increasing, and because of the nature of the services rendered by him it required his close personal attention; that he had two grown daughters, the issue of a former marriage, one of whom was dependent upon him for her support; that the plaintiff was a childless widow and was possessed of property of the approximate value of $250,000, consisting of real and personal property, a portion of the real estate being the property described in the complaint of the estimated value of $60,000; that the plaintiff was inexperienced in the care of such property as she possessed and the care thereof was burdensome and troublesome to her and caused her much

anxiety and concern; that within two years prior to the tenth day of March, 1914, the plaintiff and defendant agreed that they would marry; that upon such marriage the defendant would abandon and discontinue his practice of medicine and surgery, and that thereafter they would tour Europe on their honeymoon; that the defendant was to aid the plaintiff to the extent of his ability in the care and management of her said property; that after such marriage the plaintiff and defendant would be supported by the property of the plaintiff and that the plaintiff would assist the defendant in the support of the defendant's daughter when such aid became necessary; that the plaintiff then further agreed that she would by her last will and testament devise to the defendant the real estate described in the complaint, and after making certain designated bequests, aggregating $79,000, would make the defendant the residuary legatee under said will; that the plaintiff promised and agreed that she would, prior to said marriage, reduce the said contract to writing; that as the time for the said marriage approached the defendant urged the plaintiff to reduce the said contract to writing, whereupon she stated to him that because of her preparation for the approaching marriage and her other engagements she could not then attend to the preparation and execution of said contract, but promised that immediately upon the consummation of said marriage she would reduce said contract to writing and deliver the same to the defendant; that the marriage took place on March 10, 1914; that shortly thereafter the defendant again urged the plaintiff to reduce the said contract to writing, whereupon the plaintiff, under date of March 27, 1914, executed and delivered to the defendant a will, holographic in form, by the terms of which she devised the property described in the complaint to the defendant and, after making bequests in the sum of $79,000, made the defendant the residuary legatee and appointed him executor without bonds; that the defendant accepted and retained said will, believing the same to be the irrevocable act of the plaintiff; that at the time of the execution, delivery, and acceptance of said will by the defendant the plaintiff and the defendant both believed said will would be a substitute in law for the written contract which the plaintiff promised to execute before the marriage; that at the time of the execution of said will the plaintiff agreed that in con-

sideration of the acceptance by the defendant of said will as a substitute for said written agreement the plaintiff would not revoke said will and that the same should be and remain the last will and testament of the said plaintiff in the event that plaintiff should die before the defendant; that the defendant accepted and has retained said will with that understanding; that the defendant's first intimation or suggestion that the plaintiff did not intend to perform said agreement was the filing of the complaint herein and the assertion in said complaint of rights in plaintiff inconsistent with said promises; that the defendant at all times relied upon the promise of the plaintiff to reduce said contract to writing, and induced by said promise, and not otherwise, the defendant did abandon his profession of medicine and surgery and did enter into the contract of marriage with the plaintiff on March 10, 1914; that if the plaintiff had not promised to reduce said contract to writing the defendant would not have married her and would not have abandoned or discontinued his practice of medicine and surgery; that after the said marriage the plaintiff and defendant toured Europe and the British Isles, returned to the United States, and, through no fault of the defendant, separated; that in July, 1915, they resumed their marital relations, but separated finally, also through no fault of the defendant, in March, 1916, after which time the plaintiff has refused to live with the defendant and has refused to permit the defendant to aid her in the care of her said property; that at all times since said marriage the defendant has been able, ready, and willing to perform his part of the contract and of said contract of marriage; "that by reason of said marriage of plaintiff and defendant and the discontinuance and abandonment of defendant's attention to his said medical and surgical practice as aforesaid, the defendant's said practice of medicine and surgery became, was, continued to be and now is scattered, lost and destroyed to the defendant, and the said defendant cannot re-establish, has not re-established, and could not have re-established, and never will be able during the remaining years of his life, to re-establish said practice of medicine and surgery at said Merced county, *or the equivalent practice at any other place, or any practice of medicine and surgery except in a very small and very unremunerative practice of medicine and surgery as compared*

*with the practice abandoned in the county of Merced"* as
hereinbefore alleged; that the plaintiff has not since the last
separation contributed in any way to the support and main-
tenance of defendant; "that the only means of livelihood of
the defendant after the said failure of the plaintiff to con-
tribute to the support and maintenance of the defendant
was for the defendant to resume *as best he could at the place
where the practice of medicine and surgery would most likely
yield a livelihood for defendant,"* and the defendant has been
compelled by the said failure of the plaintiff to perform
the said contract as agreed to resume the practice of medicine
and surgery for a living; that the defendant has been greatly
injured and damaged by the failure and refusal of the said
plaintiff to perform said agreement; *that the amount of said
injury and damage cannot be computed or estimated, and
the said damage and injury cannot be compensated in money;*
that the defendant has no remedy at law for the said breach
of said contract by the said plaintiff.

At the time the answer containing the foregoing allegations
was filed the defendant also filed a cross-complaint repeating
therein the allegations of said answer and in addition thereto
alleging that the plaintiff threatens to and will, unless re-
strained by the court, dispose of the said property without
sufficient or adequate consideration, for the purpose of de-
priving the defendant of his interest in said property. The
defendant prays that it be adjudged that the plaintiff holds
title to said property subject to said alleged agreement;
that the plaintiff be enjoined from making a last will and
testament other than in the words and figures of the present
will so long as the defendant be living, and that the plaintiff
be enjoined from giving away or otherwise disposing of her
property except in good faith for a valuable consideration
approximating the value of the property disposed of, and
for general relief.

Demurrers both general and special were interposed sepa-
rately to the answer and to the cross-complaint. The suffi-
ciency of the pleadings under attack is therefore the only
matter before us for consideration on this appeal. When
stripped of what is deemed not essential to a disposition of
the case, and when freed from considerable confusion arising
by reason of divergent theories discussed in the numerous
briefs, the situation of the parties as disclosed by the plead-

ings is simply this: By the filing of the complaint to quiet title it is the plaintiff's purpose to avoid the consequences of the agreement and will alleged in the defendants pleadings, to the end, first, that she may have the present full use and enjoyment of the particular property described in the complaint disentangled from any rights which the defendant may now or hereafter assert in the same; and, secondly, that there may be attached to said will by judicial decree the ambulatory feature attending the ordinary will so that she may thereafter safely revoke the said will without the defendant's consent. To accomplish all this the plaintiff is appealing to the equitable jurisdiction of the court. On the part of the defendant he frankly admits and declares: "The defense alleged in the answer and cross-complaint is defensive entirely. There will be no time before the death of the plaintiff when the defendant will have any right to the property or right of action. If defendant dies before plaintiff, then all his rights will expire with him." But he insists that notwithstanding the absence of a present right of action in him he has the right to set forth such defensive matters in his pleadings as will entitle him to prove and to fully disclose to the court the inequitable and unconscionable attitude which he claims the plaintiff has assumed toward him, to the end that the court may deny her any relief whatsoever and dismiss her complaint, or, if a decree be entered in her favor, that the court may attach such terms and conditions to the relief so granted as will properly safeguard his interests or make him whole as to the loss he claims to have sustained by reason of his change of position to his detriment, which loss he claims to have sustained through no fault of his own but wholly because of the alleged breach of contract by the plaintiff as evidenced by the commencement of said action.

[1] Unquestionably defendant is invoking a well-recognized principle in equity jurisprudence, "He who seeks equity must do equity." This is one of the most familiar maxims of equity. It means that the court will not confer its equitable relief upon one seeking its interposition and aid "unless he has acknowledged or conceded, or will admit and provide for, all the equitable rights, claims and demands justly belonging to the adverse party, and growing out of or necessarily involved in the subject matter of the contro-

versy'' (Pomeroy's Equity Jurisprudence, sec. 386; *Cox* v. *Hughes,* 10 Cal. App. 553 [102 Pac 956]; 10 Cal. Jur. 508). This principle of equity is applicable to an action to quiet title (*Holland* v. *Hotchkiss,* 162 Cal. 366 [L. R. A. 1915C, 492, 123 Pac. 258]; 22 Cal. Jur. 134, and cases cited). A familiar instance of its application is when the court precludes a mortgagor from quieting his title against an outlawed mortgage without payment of the mortgage debt. In such a case, when the debt is not paid or not required to be paid, the court does not decree that the plaintiff has no interest in the property, but dismisses the action for want of equity in the plaintiff's cause (*Boyce* v. *Fisk,* 110 Cal. 107 [42 Pac. 473]; 17 Cal. Jur. 1005). [2] It is, of course, true that if the defendant claims an interest in the property the title to which is sought to be quieted, or if he claims that the plaintiff has placed him in such a position as to render it inequitable to grant to the plaintiff the relief sought, he must set forth his claim or demand in an appropriate pleading. This the defendant has attempted to do by the allegations of his answer and cross-complaint. The important question, therefore, is: What properly defensive matter has the defendant set forth that would defeat the plaintiff's cause of action or cause the court to leave her where it finds her or impose conditional relief? If he has such an interest in the property, present or prospective, as may be lawfully recognized, or if the plaintiff has been guilty of unconscionable conduct toward the defendant, such interest or conduct or both arose as necessarily incidental to the contract alleged by the defendant and the action of the parties thereunder.

[3] It must be taken as the settled law in this state that by the amendment of 1905, adding subdivision 7 to section 1624 of the Civil Code, and by the corresponding provision of subdivision 7 of section 1973 of the Code of Civil Procedure as amended in 1907, ''An agreement . . . to devise or bequeath any property, or to make any provision for any person by will'' is invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or his agent. Also it has been the law of this state, at least since the adoption of the codes, that ''An agreement made upon consideration of marriage other than a mutual promise to marry'' is invalid unless likewise

in writing as provided by subdivision 3 in each of the sections above referred to.

Prior to 1905 an oral contract to make a will was enforceable in a court of equity. (*Owens* v. *McNally*, 113 Cal. 444 [33 L. R. A. 369, 45 Pac. 710]; *McCabe* v. *Healy*, 138 Cal. 81 [70 Pac. 1008]; *Rogers* v. *Schlotterback*, 167 Cal. 35 [138 Pac. 728]; *Wolfsen* v. *Smyer*, 178 Cal. 775 [175 Pac. 10].) The reason prompting the amendment of 1905 is aptly stated by the code commissioner in his note appended to section 1624, as follows: "The change consists in the addition of subdivision 7. The cases in which it [is] sought to establish by parol evidence alleged agreements to provide for a person by will are becoming so numerous as to warrant the assumption that the reasons inducing the original enactment of the statute of frauds apply with especial force to agreements of this class and that they ought to be brought within that statute." Since that amendment the effect of the new subdivision as applied to numerous and varying states of facts has been before the courts, but nowhere has it been decided, so far as we are advised, that the amendment should not be given the same force and effect as other provisions of the statute of frauds. [4] Especially with reference to the new provision it has been held that neither subsequent marriage nor the execution of a will pursuant to an oral antenuptial agreement to make a will is such part performance as will relieve the contract from the operation of the statute (*Hughes* v. *Hughes*, 49 Cal. App. 206 [193 Pac. 144]; *Trout* v. *Ogilvie*, 41 Cal. App. 167 [182 Pac. 333]). [5] It is the general rule, however, that a contract falling within the operation of the statute, but made in contravention thereof, is not invalid in the sense that it is void. It is merely voidable. The statute is said to relate to the remedy only and not to affect the validity of the oral contract. "Such a contract, if otherwise valid, remains so, and the sole effect of the statute is to render it unenforceable by one party against the will of the other who abandons or repudiates it." (27 C. J. 309, 310; *Warder* v. *Hutchison*, 69 Cal. App. 291 [231 Pac. 563].) [6] It may be assumed for the purposes of this decision that sufficient part performance of a parol agreement otherwise unenforceable under said subdivision 7 may take the contract out of the statute. But the acts of the parties alleged to be sufficient part performance

must be referable to the covenants of the contract other than the covenants of the marital contract. (*Trout* v. *Ogilvie, supra.*) The defendant insists that there was sufficient part performance in this, that pursuant to the plaintiff's agreement to make a will for the defendant's benefit the said will was actually executed and delivered to the defendant with the further agreement that the same should constitute her last will and testament and would never be revoked; that in pursuance of said agreement so performed the defendant did abandon his medical practice. Nothing further was to be done on the part of the plaintiff so far as the execution of the will was concerned. In the absence of some affirmative act on her part in repudiation of the contract as executed the defendant was willing to bide his time and rest upon the uncertain chance of surviving the plaintiff. Nothing further was to be done by the defendant under said contract in view of the plaintiff's refusal to live with him and to permit him to assist in the management of said property. We shall assume that under these circumstances sufficient part performance to take the contract out of the statute has been shown. No fraud is alleged. [7] The mere promise of the plaintiff to reduce the contract to writing and her failure or refusal to do so did not constitute fraud (*Long* v. *Long,* 162 Cal. 427 [122 Pac. 1077]). That the subject matter of the alleged contract was lawful is not questioned. That said contract was unique must be admitted. What may be assumed to be defendant's proposal of marriage was conditioned on the promise on the part of his prospective wife that she would make it possible for him to receive more than two-thirds of her $250,000 estate and in the meantime he would husband her resources, so to speak. Without such promise on her part he would not have married her. But the parties had the right to make that sort of a contract, and it is assumed the plaintiff had the right to bargain away her power to revoke said will. It may also be assumed that an agreement not to revoke a will is not within the statute of frauds. Finally, it may be assumed that the defendant has, for the purpose of the consideration of the general demurrers, alleged sufficient facts as against the plaintiff as would justify the court in granting to him some kind of relief. What, then, would

be the nature of the relief to which the defendant might be entitled?

In the present situation of the parties a remedy by way of specific performance is not available to the defendant for the reason that such a remedy would not be mutual in that the defendant could not be compelled specifically to perform his part of the contract, to wit, to assist in the care and management of the plaintiff's property, a purely personal service. [8] Equity will not require the specific performance of a contract where the party seeking its enforcement cannot from the nature of the contract be compelled specifically to perform on his part (Civ. Code, secs. 3386, 3390; *Cooper* v. *Pena*, 21 Cal. 403; *O'Brien* v. *Perry*, 130 Cal. 526 [62 Pac. 927]; *Berry* v. *Moulie*, 180 Cal. 137 [179 Pac. 686]; *Poultry Producers etc.* v. *Barlow*, 189 Cal. 278 [208 Pac. 93]). Nor would the court be authorized to issue an injunction to restrain the breach of said contract. Section 526 of the Code of Civil Procedure provides that an injunction cannot be granted to prevent the breach of a contract the performance of which could not be specifically enforced. The fifth subdivision of section 3423 of the Civil Code is to the same effect. Concerning said subdivision this court said in *Poultry Producers, etc.,* v. *Barlow, supra,* at page 287: "In this jurisdiction, however, the express statutory inhibition above referred to—subdivision 5 of section 3423, of the Civil Code—prohibits the granting of an injunction to prevent the breach of any contract, 'the performance of which would not be specifically enforced.' The result is that in this state the courts may not enter a conditional decree in order to avoid the effect of a lack of that mutuality of remedy which is an essential to the right to specific performance. (*Anderson* v. *Neal Institutes Co.,* 37 Cal. App. 174 [173 Pac. 779].)" No point is made that the defendant is entitled to consideration on account of any alleged failure of the plaintiff to assist in the care of the dependent daughter. No claim is made for compensation for services past, present or future, in caring for the plaintiff's property.

[9] If this were an action by defendant as the survivor against the representatives of his deceased wife's estate the measure of damages would probably be "the value of the property agreed to be devised or bequeathed" (*Roy* v. *Pos,* 183 Cal. 359, 367 [191 Pac. 542]). But we are here dealing

with a controversy *inter vivos.* The defendant may not survive the plaintiff. If he does not he concedes that "all his rights will expire with him." He is therefore now confined to the relief which the court might impose on the plaintiff by requiring her to compensate him for whatever damages he has suffered by reason of his change of position to his detriment in giving up his medical practice in Merced county and establishing his practice elsewhere. [10] The loss which he claims to have so suffered is such damage as the law may reasonably fix and determine. The fixation of damages in tort actions accruing to a professional man by reason of the interruption of his business is too common to require reference. The value of the business before and after such interruption is necessarily taken into consideration in fixing the damage. (*City of Logansport* v. *Justice,* 74 Ind. 378 [39 Am. Rep. 79]; *Stafford* v. *City of Oskaloosa,* 64 Iowa, 251 [20 N. W. 174].) The measure of the defendant's damage, therefore, is an amount which will compensate him for the detriment he has suffered on account of his change of position. In order that the amount thereof be properly ascertainable it is necessary for the defendant to allege facts from which when proved the court may properly fix the amount. We are thus brought to a consideration of the special demurrers.

[11] The allegations of the answer and cross-complaint, as indicated particularly by the words we have italicized in the foregoing statement of facts, are that the defendant discontinued and abandoned a medical practice in Merced County yielding him from seven to twelve thousand dollars net per annum (which allegation alone would seem to admit of rather a wide margin of speculation in fixing the value of his former practice); that he will never be able *during the remaining years of his life* to re-establish his practice in Merced County or the *equivalent* practice at any other place or any practice of medicine and surgery except a *very small* and *very unremunerative* practice *as compared with* the abandoned practice, and that in order to support himself he has been compelled to resume the practice of medicine and surgery in a locality *most likely* to yield a livelihood to him and that the amount of his injury cannot be computed in money. The substance of his allegation is that in reliance upon said contract he gave up a remunerative practice of

medicine and surgery in Merced County for another practice at another place which was less lucrative and agreeable. He failed or refused to allege his age so that the court might properly receive proof of his expectancy. He has failed utterly to advise the court or the adverse party as to his revenues from his present practice, which practice it may be reasonably inferred has been carried on for many years. Conclusions only and not facts are alleged. If it should transpire that the allegations referred to be not true it is obvious that the defendant could not be prosecuted for perjury by reason of the uncertainty and immateriality thereof. (Sec. 118a, Pen. Code; 20 Cal. Jur. 1012.) In the special demurrer to the said allegations is found the following: "1. It cannot be ascertained therefrom how long defendant's medical or surgical practice would have continued. 2. It cannot be ascertained therefrom why the money value thereof or what would have been earned therefrom cannot be ascertained. It cannot be ascertained therefrom what defendant lost by loss of medical practice. . . . 18. Said answer is uncertain in that it cannot be determined therefrom to what extent the defendant was unable to resume medical or surgical practice or what the yield from his medical or surgical practice as resumed was. . . . 20. Said answer is uncertain in that it cannot be determined therefrom what the defendant means by the statement that he resumed as best he could the practice of medicine and surgery or what he means by stating that he resumed such practice in the most likely place." Similar objection is made to the same allegations in the cross-complaint. Further objection is made to both pleadings on the ground that they are uncertain in that it cannot be determined therefrom why the defendant's alleged damages cannot be computed or estimated. We are satisfied from an examination of these pleadings that the plaintiff was entitled to allegations of fact which would advise her and the court of something more than mere opinion on matters so vital to the defendant's cause and his alleged loss of business. If he is not in a position to truthfully allege what his revenues have been either before or after his change of position his situation in that respect is perhaps unfortunate but is of no consequence in the consideration of the requirement of sufficient pleadings to set forth the facts (*Hoyt* v. *Thomas,* 58 Cal. App. 14 [207 Pac. 1038]). There was cer-

tainly no impediment in the way of an allegation as to the age of the defendant so that the court might under recognized rules and practices determine his expectancy. He presented six different pleadings to the court wherein objections were successfully made to their sufficiency and upon his failure to request leave to further amend the court was justified in rendering judgment against him (*Morrison* v. *Land,* 169 Cal. 580, 591 [147 Pac. 259]).

The judgment is affirmed.

Richards, J., Lawlor, J., Waste, J., Seawell, J., Myers, C. J., and Lennon, J., concurred.