## SCHOOL DIST. NO. 39, MAYES COUNTY, v. HICKS.

No. 19216.   Opinion Filed Sept. 17, 1929.

144

Wilkerson & Brown, for plaintiff in error.

Langley & Langley, for defendant in error.

REID, C. On April 23, 1921, school district No. 39 of Mayes county, acting by its board of education, and with the approval of the county superintendent of public instruction, made a contract with Mrs. J. Ida Hicks to teach the school of district for the term of 1921-1922, for eight months at a salary of $80 per month. When she had taught about two months and three weeks of the term, the school board came together to consider some dissatisfaction which had arisen in regard to how she was conducting the school. At this meeting there were present the teacher, board members, the county superintendent, some of the pupils and some of the patrons of the school. Evidence was heard as to the conditions which had prevailed in the school, and on the question as to whether the teacher had been able to control the students, and whether she was competent to conduct the school and control the pupils. She was given an opportunity by the board to present evidence on the question, but offered none. At the conclusion of the hearing, the board members unanimously voted to discharge her, but the county superintendent voted against her dismissal.

On February 3, 1923, Mrs. Hicks brought this suit alleging that her dismissal was without grounds, and asked judgment for the amount she would have earned had she been permitted to complete her contract. The district answered that she was discharged by the school board acting in conjunction with the county superintendent for the reasons that she was incompetent to control the school and to maintain reasonable order and discipline therein; that she was negligent in her efforts to maintain such discipline and order; and permitted such conduct by the pupils as made it impossible for the pupils of the school to pursue their studies; and further pleaded specific things in accordance with these allegations. By reply plaintiff denied these allegations of the answer and pleaded matters showing that she met the duties required of her.

The case was tried to a jury in September, 1927, and resulted in a verdict for the plaintiff for the amount sued for. The defendant brings this appeal.

Section 10367, C. O. S. 1921, provides, among other things, that boards of education, "in conjunction with such superintendents, may dismiss such teacher or teachers for incompetency, cruelty, negligence or immorality."

No question was raised by the pleadings or in the trial of the case that the dismissal of the teacher was not legal because the same did not have the approval of the county superintendent, and we find it unnecessary to here decide the question.

It appears that upon the trial of the case, the defendant assumed the burden of proof, and proceeded to introduce evidence along the same line as that heard by the school board, and tending to establish the allegations of its answer.

During the next two terms the plaintiff taught the school of another district, and later for four months she finished a term in still another district. And over the objection of defendant, plaintiff was permitted to introduce the testimony of certain witnesses relating to the services of plaintiff in these schools. This evidence being so concisely stated in plaintiff's brief, we quote from it:

"R. L. Bledsoe lives neighbor to plaintiff, and in a school district adjoining defendant district; plaintiff taught in witness' district the two years next following the school term in question, and taught a good school.

"Smith Doolittle: Witness lives near a schoolhouse in Mayes county where plaintiff taught in 1926-1927, and as far as he was permitted to say anything, he said plaintiff taught a good school.

"R. Seidig: Plaintiff taught a good school in 1926-27.

"W. H. Russell lives in and was patron of the school taught by plaintiff the two years next following her experience in defendant district, and she taught a good school.

"Charles McCausland: About the same as W.H. Russell."

It is our conclusion that the admission of this evidence was error for the reason that it brought into the case remote and collateral issues. Plaintiff had contracted to teach defendant's school, and she brought this suit to recover her salary, claiming she was discharged by the school board without right or authority of law. The evidence which

the school district had introduced related only to the conditions which had prevailed in that school while she conducted it. She offered no evidence other than her own in regard to her administration of defendant's school, but by evidence that she **thereafter** in other places taught what the witnesses believed to be good schools, she sought to show that she properly conducted defendant's school.

If the rule be established and recognized that this evidence is admissible, let us see where it will lead. Suppose we have a similar case in which the teacher had taught in 20 other schools, then question how she conducted each of these, at the instance of either party to the suit, can become a material issue upon which evidence can be introduced by either party; and with the result that there are brought to the case 20 collateral issues, with the possibility of the same amount of testimony on each of them as would be had upon the main issue. No case involving a similar state of facts has been called to our attention, and we have found none. But we think, in principle, the opinion in the case of Reed Grocery Co. v. Miller, 36 Okla. 134, 128 Pac. 271, decides the question here presented.

In that case, the plaintiff, a wholesale grocery company, brought suit to recover the amount it had paid the defendant for a car of hominy, which was shown by its testimony to have been unfit for use. The defendant was permitted to show that about the same time it sold its products in Oklahoma City, where its place of business was located, and that its customers there made no complaint about the goods; and judgment went for the defendant. The court held the evidence inadmissible, reversed and remanded the case, saying:

"This testimony was wholly irrelevant, and should not have been admitted. It did not tend to throw any light upon the issue as to the quality of the hominy involved in the present controversy, at the time of its delivery to the plaintiff, and it should have been excluded. It was of a highly prejudicial nature. Bloom's Son Co. et al. v. Haas, 130 Mo. App. 122, 108 S. W. 1078; Cook v. Sheehan, 16 S. D. 92, 91 N. W. 452."

And we have followed the same rule in these cases: Wolverine Oil Co. v. Parks, 79 Okla. 318, 173 Pac. 624; Hunt v. Jones, 98 Okla. 99, 224 Pac. 354.

And sustaining the same principle, in other jurisdictions, see: Atchison, etc., R. R. Co. v. Gant, 38 Kan. 608, 17 Pac. 54, 5 A. S. R. 780; City of Junction City v. Blades (Kan. App. N. D.) 41 Pac. 677; Stafford v. City of Oskaloosa (Iowa.) 20 N. W. 174; I. C. R. R. Co. v. Borders, 61 Ill. App. 55; Wooster v. Broadway & S. A. R. Co., 25 N. Y. S. 378; McDonald v. Savoy, 110 Mass. 49.

In the work of Gillett on Indirect and Collateral Evidence, we find the rule and the reasons therefor stated in this language:

"While there are occasional seeming exceptions, yet there exists in the main a sharply defined exclusionary rule that remote and collateral facts from which no fair and reasonable inference can be drawn are to be excluded. The reason for this doctrine is twofold. 1st. The party against whom such evidence is offered is not apprised by the pleadings that such evidence will be tendered, and he would, therefore, in all probability, be unprepared to meet it. 2nd. Such evidence would tend to distract the attention of the jury from the real point in issue, and would often prejudice and mislead."

The reason for the exclusion of this testimony is illustrated by the course this trial took. After the plaintiff had introduced her evidence in regard to the other schools, then the defendant introduced testimony on the new issues thus raised, and the questions as to how she conducted each of the other schools became issues almost as much controverted as the inquiry on how she administered the school about which the lawsuit began. But it is suggested by the plaintiff that if the admission of this testimony was error, it was cured by the court's charge wherein the jury were told that:

"The evidence admitted as to the plaintiff's teaching school at other places subsequent to the time of the teaching in district No. 29 has been admitted for the purpose of shedding light, if any it does shed, on the question of the competency or incompetency, negligence or care of the plaintiff at the time of the alleged negligence and incompetency, and is not to be considered by you for any other purpose. Your verdict should be based upon the proven conditions at the time of the dismissal of the plaintiff, that is, conditions existing in the school being carried on and conducted by the plaintiff in district No. 29."

The instruction did not heal the error. Evidence not admissible cannot throw light on any issue in a case. The questions upon which the court said the evidence was admitted for the purpose of throwing light, if any, were the only questions or issues in the case. If the error was cured by this charge, then the admission of any improper testimony could likewise be cured.

The defendant says in its brief that other alleged errors are so patent that it is deemed

unnecessary to cite any authority to support its contention. We will permit the questions to remain where defendant has left them. The errors, if any, are not so plain to us, and we will not search the books to determine whether defendant's argument is sound, but will assume that the trial court did not err in those respects.

For the reasons indicated, the cause is reversed and remanded for a new trial.

JEFFREY, LEACH, HERR, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.